Ida KEEL, now Castleberry, Ada Keel, now Runnells, William T. Keel, L. D. Keel, Minta Lee Thompson, nee McAlester, Robert A. Keel, Leo Keel, an incompetent person, by his next friend, L. D. Keel, and L. D. Keel, as administrator of the estate of Lizzie Keel, deceased, Plaintiffs in Error,

v.

Clarence P. MILLER, Defendant in Error.

No. 37664.

Supreme Court of Oklahoma.

Feb. 11, 1958.

Rehearing Denied April 8, 1958.

King & Wadlington, by Carloss Wadlington, Ada, for plaintiffs in error.

Busby, Stanfield, Deaton & West, by W. V. Stanfield, Ada, for defendant in error.

PER CURIAM.

This action, No. 20,052, District Court, Pontotoc County, was initiated by petition

filed April 12, 1951, by L. D. Keel, as guardian of Lizzie Keel, a full-blood Chickasaw, his mother, wherein it was alleged that a certain judgment rendered in No. 19,115, District Court, Pontotoc County, on May 6, 1948, recorded May 7, 1948, quieting title to certain property in defendant in error and against Lizzie Keel, should be vacated. After this action was initiated Lizzie Keel died and the action was properly revived by plaintiffs in error. Upon trial, judgment was rendered for defendant in error, and the plaintiffs in error, who are the heirs and the administrator of the estate of Lizzie Keel, appeal.

The judgment sought to be vacated by this action was rendered upon a petition which was filed July 14, 1947, to quiet title to the property involved upon the basis of a resale tax deed issued to defendant in error upon his payment of $1,104.52 delinquent taxes for the years 1935–1946 inclusive. Personal service of process was made on Lizzie Keel in that action and she employed counsel, who filed an answer which set forth her claim of title. Notice of the action was also served on the Superintendent for the Five Civilized Tribes, and the Probate Attorney thereafter filed an election not to remove the case to Federal Court. Because Lizzie Keel was unable to tender the delinquent taxes her attorneys, respected members of the bar, negotiated a compromise by which they were able to salvage some of the value of the property for her. A full written statement of the facts of the quiet title action and the legal position of Lizzie Keel was made by one of her attorneys to the Probate Attorney prior to the consummation of the compromise. The rendition of judgment against her was not thereafter contested.

■ Many of the reasons advanced for the vacation of this judgment may be disposed of upon the basis of the statute of limitations. The journal entry of judgment was recorded on May 7, 1948, based upon a compromise or settlement to which she was a party, and she and her attorney received their agreed benefits therefrom. This action was not filed until April 12,

1951. Thus, more than two years had passed from the date when Lizzie Keel and her attorney settled the case and agreed to the judgment, and the petition to vacate upon the ground of fraud and unavoidable casualty was barred. Sec. 95(3) and Sec. 1038, 12 O.S.1951.

In order to avoid the foregoing result, plaintiffs in error also assert that Lizzie Keel was a person of unsound mind, and as a consequence, that the statute of limitations had not barred the action. The bulk of the testimony in the action dealt with this phase of the controversy and, as might be expected, was conflicting. At the time of her death in March, 1952, Lizzie Keel was 84 years of age, and had been afflicted with extremely poor vision and hearing for several years. It was mostly as a result of these infirmities that the heirs and other non-expert witnesses seemed to arrive at their conclusion that she was mentally incompetent. At least these physical infirmities appear most often in the expressed facts from which their conclusion was deduced. It was even testified by two of her children that she had been incompetent since prior to 1940, a conclusion irreconcilable with their conduct, as well as hers, during that period.

The evidence discloses that Lizzie Keel did not believe that any land of an Indian was taxable; that when served by summons in the quiet title action she chose as her attorney to defend the action a member of the bar who had represented her for many years; that she talked about the case with him and, when informed of the necessity of a tender of delinquent taxes in order to attack the tax deed, left his office before returning finally to employ him in the case; that she told him she was not able to tender the delinquent taxes; that she made several trips from her home near Stratford to Pauls Valley to discuss the case with him; that sometime in 1947 she went to Muskogee to talk with the United States Probate Attorney concerning the taxable status of the property; that the probate attorney talked with her alone and felt that "she understood what I said to her" although she

was less alert than she had been in 1920 when he had talked with her; that the probate attorney told her the land was taxable; that she maintained a checking account in the bank at Stratford, and that as late as 1951 she negotiated a loan from that bank; that in 1945 and 1946 she had engaged in negotiations with a lease broker, who testified that his impression of her was that she seemed "a little smarter than the average Indian"; that she had lived in her own home near Stratford until only two years prior to her death; that she was not placed under guardianship until April 3, 1951, only nine days before this action was initiated.

That one is aged and infirm does not necessarily render him mentally incompetent. As we have noted, witnesses for the plaintiffs in error testified to their conclusion that Lizzie Keel was not competent to conduct her affairs, but, as all recognize, this conflict in the evidence was a matter to be reconciled by the trial court. It is only where its conclusion is against the clear weight of the evidence that we will reverse the judgment. This record does not present that situation. There inheres in the trial court's judgment a finding of all facts necessary to sustain it, and this includes the finding that Lizzie Keel was not a person of unsound mind, under subdivision 5 of Section 1031, or Section 1038, 12 O.S.1951, either at the time this action was filed or at the time the judgment was rendered. The foregoing disposes of the petition to vacate on the grounds of sub-divisions 4, 5 and 7 of Section 1031, 12 O.S.1951.

Plaintiffs in error also argue that the judgment should be vacated for "irregularity in obtaining" the judgment under sub-division 3 of Section 1031. Assuming this particular reason to have been properly presented to the trial court, a fact defendant in error disputes, we are of the opinion that the action of the trial court must be affirmed. It is true that we have held that an attorney is without authority to compromise his client's claim without authorization of his client, and that this is an irregularity justifying vacating a judgment

under the third sub-division of Section 1031. National Valve & Mfg. Co. v. Wright, 205 Okl. 571, 240 P.2d 766, 29 A.L.R.2d 448. In this action, however, there was ample testimony, although in conflict with plaintiffs in error's testimony, from which the trial court could conclude that the attorneys were authorized to reach a compromise with the plaintiff in the quiet title action. Her attorney's testimony was that Lizzie came to him and they discussed the action pending against her; that he informed her that a tender of the delinquent taxes would be necessary to defend the action; that she informed him she could not make a tender; that he advised her to attempt to compromise the case; that "Before she left I told her that we might file some kind of an answer and get some kind of *comprise* and get her something out of it if she couldn't pay her taxes otherwise I think I told her, 'you are going to lose your land if you don't pay the taxes' and then she said she was going and she went, but she came back later"; that when she returned she stated to him: "Well, she says 'Get me all the damages', she called it, 'that you can', and I said I would try to *comprise* and she said to just go ahead and do the best I could and that is what I did. * * * She just made this statement, 'You can get all you can and I will give you half of it' "; that when the compromise was completed he went to her home to deliver the money but did not find her there, whereupon he went to her daughter's home and told the daughter " * * * what I had done and gave Ida a copy * * *"; that he thereupon deposited the money in Lizzie's account. The judgment in this regard is not against the clear weight of the evidence for from this testimony it would appear that the attorneys for Lizzie Keel had been given specific authorization to compromise after a full disclosure to her of her legal position.

Our decision on the foregoing propositions render unnecessary any discussion of the other assignments of error.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the Court.