**Chris DRAGSTRA et al., Appellants,**

v.

**NORTHWESTERN STATE BANK OF ORANGE CITY, Appellee.**

No. 54685.

Supreme Court of Iowa.

Dec. 15, 1971.

Civil Procedure. The amended petition was attacked by a motion to dismiss. Rule 104(b), R.C.P. Appellants are Rena Dragstra ("Rena"), who is the wife of Chris Dragstra ("Dragstra"), the children of Rena and Dragstra, and the guardian of those children. Appellee, who holds the judgment in question, is Northwestern State Bank of Orange City ("the Bank").

A motion to dismiss a petition is to be sustained only when "it appears to a certainty plaintiff has failed to state a claim on which any relief may be granted under any state of facts which could be proved in support of the claims asserted by him." Osbekoff v. Mallory, 188 N.W.2d 294, 299 (Iowa). We approach appellants' amended petition in that frame of reference. Since a motion to dismiss admits the facts alleged in the pleading attacked, we assume the truth of appellants' allegations—but only, of course, for the purposes of the motion.

Two petitions are involved. The first is the Bank's original petition founded on notes and on a guaranty, on which two judgments which are involved here were rendered. The second is appellants' present amended petition to vacate the second of those judgments. We will speak of these pleadings as "the Bank's petition" and "appellants' amended petition".

Dragstra was engaged in farming. He reached the limit of his credit. Rena owned considerable land. The Bank desired a guaranty of Dragstra's debts by Rena. The Bank therefore prepared a written guaranty to a limit of $50,000 covering Dragstra's past and future indebtedness. Dragstra indicated to the Bank that Rena preferred not to come to the Bank and that he would take the guaranty home for her signature. He returned with the guaranty, indicating that she had signed it. The president of the Bank signed the guaranty as witness.

Thereafter the Bank extended credit to Dragstra—whether in the form of new

Dull Law Firm, Le Mars, for appellants.

Klay & Bastemeyer and Te Paske & Rens, Orange City, for appellee.

UHLENHOPP, Justice.

This appeal involves the sufficiency of an amended petition to vacate a summary judgment. See rules 252, 253, Rules of

loans or extensions of old ones, or both, is not clear.

At some time during the transactions, Dragstra and Rena acknowledged to the Bank that Rena never signed the guaranty.

Dragstra became insolvent. Rena and he conveyed her land to their children.

Subsequently, the Bank filed its petition against Dragstra, Rena, their children, and the guardian of the children. The petition was in four counts (divisions): Count I sought judgment against Dragstra in excess of $80,000 on his notes. Count II sought judgment against Rena for $50,000 on the alleged guaranty. In that count, the Bank alleged that Rena signed the guaranty. Count III sought to subject Rena's land to such judgment on the guaranty, as fraudulently conveyed. Count IV sought to foreclose the Bank's security interest in Dragstra's personalty. Dragstra, Rena, the children, and the guardian filed answer. They denied, among other things, that Rena signed the guaranty. The Bank was represented by Attorney Earl T. Klay ("Mr. Klay"), and Dragstra, Rena, the children, and the guardian were represented by Attorney Maurice A. Te Paske ("Mr. Te Paske"). (Attorney Maurice A. Te Paske is not the same person as the Bank's present co-counsel of the same surname.) Mr. Te Paske was authorized by his clients to try to negotiate a settlement of Dragstra's obligations to the Bank. He was not authorized to admit that Rena executed the guaranty or to approve any judgment based on the guaranty.

The Bank filed a motion for summary judgment. The motion was supported by the affidavit of Mr. Klay on personal knowledge. He swore that Dragstra owed certain notes and that the guaranty, executed by Rena, guaranteed those notes.

Mr. Te Paske filed a resistance to the motion. The resistance was signed only by him (and the notary). He swore, among other things, that Rena's obligation "is limited to the 'loan guaranty agreement' executed by her".

Thereafter summary judgment was rendered against Dragstra on the motion. The court adjudged Dragstra liable on the notes. That judgment is not in question, and we will not again refer to it.

Later the Bank filed a second motion for summary judgment. Dragstra's personalty had been sold on execution in the meantime, leaving a balance of $54,-280.61. The second motion sought judgment against Rena for that amount on the guaranty and also sought to subject to the judgment the land which had been conveyed. Mr. Te Paske filed a resistance identical to the first one, again signing it himself.

Still later Mr. Klay prepared a judgment entry finding and adjudging that the resistance to summary judgment stated Rena's obligation was limited to "the loan guaranty agreement executed by her", that she was liable for $54,240.61 and interest, attorney's fees, and costs, that her real estate was fraudulently conveyed, and that special execution issue against such real estate. We will refer to this judgment as "the first judgment".

As of January 28, 1970, the second motion for summary judgment had not yet been set for hearing nor had notice of a hearing been given. On that day Mr. Klay appeared ex parte before the district court (Kelley, J.) and obtained rendition of the first judgment by the court. Mr. Klay did not file that judgment then.

On February 3, 1970, court was again held in the county (Kennedy, J.). Judge Kennedy was unaware of the unfiled first judgment. He therefore set the Bank's second motion for summary judgment for hearing for February 17, 1970. Evidently the clerk notified counsel accordingly.

On February 17, 1970, Messrs. Klay and Te Paske appeared. They entered the anteroom to the judges' chambers. Mr. Te

Paske was unaware of the first judgment and Mr. Klay did not inform him of it. Mr. Klay had with him another judgment entry, this one undated and unsigned. We will call this "the second judgment". Pages 1, 3, and 5 were new, but pages 2 and 4 were those pages taken from the first judgment. Mr. Klay showed Mr. Te Paske the second judgment and told him that Judge Kelley had approved it, that he was going to present it to Judge Kennedy for signature, and that there was nothing Mr. Te Paske could do to prevent rendition of judgment. Mr. Te Paske relied on Mr. Klay's statement, reviewed the second judgment, and asked if it could be changed so that the Dragstra home would be taken last on execution rather than first. Mr. Klay agreed and the judgment was so changed.

The word "Approved" was then written near the end of the second judgment just below the line for the judge's signature, and Mr. Klay and Mr. Te Paske signed their names just below that word as attorneys for the respective parties.

Mr. Klay thereupon went before Judge Kennedy and presented the first judgment and also the second judgment which changed the order of execution and bore the approval of the attorneys. Judge Kennedy signed the second judgment and Mr. Klay filed it with the clerk.

(Mr. Te Paske later swore that "it was not my intention to approve the judgment entry but only the changes altering the order of execution and that said approval was made only because I relied upon the statement of Mr. Klay that the judgment entry had already been approved by Judge Kelley and that there was nothing that I could do with respect to preventing the entry of the judgment which he had prepared." At the bar of this court, one of the attorneys for the Bank stated it was true that the approval endorsed on the second judgment related only to the order in which execution should be levied. The approval itself, however, contained no such

qualification. Moreover, in a later ruling Judge Kennedy stated that in rendering the second judgment he was entitled to rely on Mr. Te Paske's authority.)

On April 10, 1970, Rena learned that judgment had been rendered against her on the guaranty. At some time, which the pleadings do not show, she retained her present attorney, Mr. Burton Dull.

On June 30, 1970, appellants filed their petition to vacate the second judgment. They were then unaware of the first judgment and their petition to vacate did not refer to it. They alleged that Rena did not sign the guaranty or authorize it in any way, that the Bank and its attorney, knowing the guaranty to be a forgery, committed a fraud upon the court in obtaining the judgment of February 17, 1970, and that Mr. Te Paske had no authority to admit Rena signed the guaranty or to consent to judgment on it.

The Bank filed a motion to dismiss appellants' petition to vacate.

On August 11, 1970, hearing was held before the trial court (Kennedy, J.) on the Bank's motion to dismiss, and Mr. Klay produced and filed the first judgment. The next day, with the trial court's permission, appellants amended their petition to vacate. They alleged the existence of the first judgment. They claimed that by virtue of its existence, Mr. Klay was able to represent to Mr. Te Paske that Judge Kelley approved the second judgment and Mr. Te Paske could not prevent rendition of judgment, and that Mr. Klay was thus able to obtain Mr. Te Paske's approval on the second judgment. The Bank renewed its motion to dismiss.

On September 17, 1970, the trial court sustained the Bank's motion to dismiss appellants' amended petition. Appellants appealed.

The Bank does not seek to enforce the first judgment as a judgment but claims the second judgment is enforceable. Con-

sequently, the controversy relates to vacating the second judgment.

We think two basic questions are involved. First, does it appear to a certainty that appellants are not entitled to relief for irregularity or fraud under any state of facts which could be proved in support of their allegations? Second, was appellants' petition to vacate timely?

I. *Sufficiency of Amended Petition.* Our rules provide for setting aside judgments in three main situations: on motion for new trial filed within 10 days (or up to 30 days if extended by order) under rules 244 and 247, R.C.P.; on motion to set aside a default or judgment on default within 60 days under rule 236; and on petition to vacate or modify a judgment within one year under rules 252 and 253(a). Appellants' amended petition is under the latter rules and specifically under rule 252 (b):

Upon timely petition and notice under rule 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds: . . .

(b) Irregularity of fraud practiced in obtaining the same. . . .

The amended petition tenders issues of irregularity or fraud on the part of the Bank under appellants' allegations of: (a) securing the second judgment knowing that the guaranty was a forgery, (b) securing that judgment on the approval of Mr. Te Paske when he had no such authority, and (c) securing that judgment by obtaining Mr. Te Paske's approval of it through representations that Judge Kelley approved it and there was nothing Mr. Te Paske could do.

■ (a) As to the Bank's securing the second judgment knowing the guaranty was forged, appellants' reliance is on fraud. The difficulty is, however, that even if fraud existed, it inhered in the Bank's cause of action. False swearing regarding the elements of a cause of action does not

itself constitute a ground for subsequently setting aside a judgment under rule 252. If it did, the merits of causes of action would be continually subject to reexamination and judgments would lose their finality.

The leading case is United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. Under that decision and innumerable cases which follow it, fraud must be "extrinsic" to the cause of action, not "intrinsic". This court follows the Throckmorton rule. Stearns v. Stearns, 187 N.W.2d 733 (Iowa); Cook v. Cook, 259 Iowa 825, 146 N.W.2d 273; Scheel v. Superior Mfg. Co., 249 Iowa 873, 89 N.W.2d. 377. See also, Annot., 88 A.L.R. 1201; Note, 3 Drake L.Rev. 23.

■ The matter of the forgery of Rena's signature on the guaranty and the Bank's knowledge of the forgery was intrinsic in nature. Relief on that basis cannot be granted under rule 252.

This is not to say that the alleged forgery is irrelevant to appellants' amended petition to vacate. Under rule 253, a defense to the merits of the Bank's original petition must be alleged. The allegation that the guaranty was not executed by Rena or by her authority constitutes the defense which appellants rely on to the Bank's petition.

(b) As to Mr. Te Paske's approving judgment on the guaranty without authority, the trial court rejected appellants' contention and held that it was entitled to rely on Mr. Te Paske's authority to approve the judgment when it rendered that judgment. The trial court was of course entitled to rely on Mr. Te Paske's approval of the judgment, as an attorney appearing for a party is presumed to act with authority. Carson, Pirie, Scott & Co. v. Long, 219 Iowa 444, 257 N.W. 815. But that does not solve our problem. What happens if the attorney does not in fact have authority?

■ The presumption of an attorney's authority is not conclusive and may be rebutted. Shellhorn v. Williams, 244 Iowa

908, 58 N.W.2d 361. If an attorney in fact has no authority to consent to judgment, the judgment must be vacated. Ohlquest v. Farwell, 71 Iowa 231, 233, 32 N.W. 277, 279 ("It is undoubtedly true that an attorney cannot consent to a judgment against his client, or waive any cause of action or defense in the case; neither can he settle or compromise it without special authority."); Kilmer v. Gallaher, 112 Iowa 583, 84 N.W. 697 (collecting earlier decisions); Nothem v. Vonderharr, 189 Iowa 43, 175 N.W. 967; Kirby v. Holman, 238 Iowa 355, 25 N.W.2d 664.

Appellants' amended petition and the affidavits of Rena and Mr. Te Paske supporting it state that Mr. Te Paske was authorized to try to negotiate a settlement of the obligations of Dragstra but that Mr. Te Paske had no authority to admit the authenticity of the guaranty or to approve any judgment based on it.

■ If appellants establish that these allegations are true and that the second judgment was entered on Mr. Te Paske's approval, the judgment must be set aside. Appellants' allegations here raise an extrinsic matter. Ohlquest v. Farwell, supra; Kirby v. Holman, supra; Keel v. Miller, 323 P.2d 986 (Okl.).

■ (c) As to Mr. Klay's securing Mr. Te Paske's approval on the second judgment by the actual but undisclosed use of the first judgment, we are first at a loss to understand why Mr. Klay did not forthwith file the first judgment with the clerk. He should have done so whether that judgment was valid or invalid. When that judgment was signed by the court it ceased to be a private paper and became a court document.

■ Actually, that first judgment should not have been presented to Judge Kelley. It was irregular, if not invalid, for two reasons. First, the guaranty, if authentic, was limited to $50,000 and the Bank's petition asked judgment on it for $50,000, whereas the judgment itself was for $54,-

280.61 principal. Second, rule 238 requires that motions for summary judgment be set for hearing. Bass v. Iowa Public Service Co., 184 N.W.2d 691 (Iowa); State v. Mulqueen, 188 N.W.2d 360 (Iowa). A hearing was particularly important here. The resistance to the motion did state that Rena's obligation was limited to the loan guaranty agreement "executed by her", but the Bank knew that Rena contended she did not execute the guaranty and knew also that she herself had not signed the resistance to summary judgment.

What would have happened if Judge Kennedy had not later set the motion for summary judgment for hearing we do not know. Unaware of the first judgment, he did set the motion for hearing. At the time for hearing, according to the allegations of appellants' amended petition, Mr. Klay, without disclosing the first judgment to Mr. Te Paske, showed him an unsigned judgment, said Judge Kelley had approved it, and represented that there was nothing Mr. Te Paske could do to prevent rendition of judgment. Mr. Te Paske took Mr. Klay at his word, got the judgment changed so that the Dragstra home would be taken last, and, along with Mr. Klay, placed his signature on the judgment under the word "Approved". Thereupon Mr. Klay took the judgment entry before Judge Kennedy, together with the first judgment, and obtained rendition of the second judgment.

Appellants' allegations here raise matters of an extrinsic nature. Under all the circumstances of the case, we believe that such allegations, if established, unquestionably require that the second judgment be vacated. Rule 252(b), R.C.P.; Graves v. Graves, 132 Iowa 199, 109 N.W. 707.

We hold, therefore, that proof the guaranty was forged and the Bank knew of the forgery would not alone warrant vacating the second judgment. We further hold, however, that if appellants establish the substance of their allegations that the second judgment was entered on Mr. Te Paske's approval whereas he did not have authority to consent to judgment, or of their

allegations that the second judgment was obtained by the actual but undisclosed use of the invalid first judgment, then the second judgment must be vacated—unless appellants' amended petition was untimely.

II. *Timeliness.* A petition under rule 252 must be filed within a year after the judgment was rendered, which was done in this case. Rule 253(a), R.C.P. But rule 253(a) also provides regarding the petition, "It shall state the grounds for relief, and, if it seeks a new trial, show that they could not have been discovered in time to proceed under rule 236 or 244, and were discovered afterwards." The Bank claims that appellants' amended petition fails to show appellants could not have discovered the grounds to vacate in time to proceed under rule 236 or 244.

 We think the quoted provision is inapplicable here because appellants are not seeking a "new trial," as we shall see. Moreover, appellants could not have proceeded under rule 236 or 244 in any event. Rule 236 provides, "On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside *a default or the judgment thereon*, for mistake, inadvertence," etc. (Italics added.) This rule deals with defaults, as where a party fails to appear in response to an original notice or does not plead within the required time. See Hannan v. Bowles Watch Band Co., 180 N.W.2d 221 (Iowa). We do not have a default here. Resistance was filed to the motion for summary judgment, and Mr. Te Paske appeared for appellants at the time and place of hearing on the motion. What we have here essentially is a consent judgment, or a purported consent judgment, not a default judgment for failure to take some required procedural step. Rule 236 was not available to appellants.

Nor was rule 244 available. That rule deals with new trials. "A new trial is a retrial or reexamination, in the same court, of an issue, or issues, of fact *after a trial*." 66 C.J.S. New Trial § 1(a)

at 61 (italics added). See also 58 Am.Jur. 2d New Trial § 1 at 182. Furthermore, "Before a new trial or a rehearing can be granted, there must have been a trial; a new trial recognizes a completed trial which for sufficient reason has been set aside so that the issues may be litigated de novo." 66 C.J.S. New Trial § 3(e) at 69; and see § 3(f) at 70–71, and 58 Am.Jur.2d New Trial § 22 at 206. A decision very closely in point is Union Trust & Savings Bank v. Stanwood Feed & Grain, Inc., 158 N.W.2d 1 (Iowa); see also, Bottineau Land & Loan Co. v. Hintze, 150 Iowa 646, 125 N.W. 842. No trial occurred here in the first place, and appellants could not have a new trial under rule 244.

Appellants' amended petition was not untimely filed.

The Bank's motion to dismiss should have been overruled. The case must be returned to the district court for hearing appellants' amended petition to vacate on the merits.

Reversed.

All Justices concur.