Thomas L. FORSMARK and Patricia J. Forsmark, Appellants,

v.

STATE of Iowa, Appellee.

Amy FORSMARK, A Minor, and Anthony Forsmark, A Minor, by Patricia J. Forsmark, Their Mother and Next Friend, Appellants,

v.

STATE of Iowa, Appellee.

No. 69383.

Supreme Court of Iowa.

May 16, 1984.

Don N. Kersten, Stephen Kersten, and Tito Trevino of Kersten, Opheim, Carlson & Trevino, Fort Dodge, for appellants.

William M. Tucker and Richard M. Tucker of Phelan, Tucker, Boyle & Mullen, Iowa City, and John Scott and Iris Post, Asst. Attys. Gen., for appellee.

McCORMICK, Justice.

We consolidated two appeals by plaintiffs from adverse judgment in actions against the State. The first appeal is from judgment in a medical malpractice case, and the second is from judgment in plaintiff's separate action to vacate the judgment in the first case. We reverse and remand in the second appeal. This makes the first appeal moot, and we dismiss it.

Thomas Forsmark suffered partial paralysis following a thoracic laminectomy at University Hospitals in Iowa City on October 19, 1979. He and his wife and children subsequently sued the State for damages based on alleged malpractice by the operating surgeons. Because this claim accrued before July 1, 1982, it was triable only to the court. *See* 1982 Iowa Acts ch. 1055, § 2. The case was tried before Judge R.K. Richardson. This trial resulted in judgment for the State which is the subject of the first appeal. Plaintiffs raise various evidentiary issues in that appeal.

Approximately six weeks after the trial court's judgment in the malpractice case and almost a month after taking their appeal, plaintiffs filed a petition to vacate the judgment under Iowa Rules of Civil Procedure 252 and 253. In their petition they alleged that at the time of their trial a wrongful death malpractice action was pending against their chief medical witness in behalf of the estate of Judge Richardson's deceased brother Gail. They also alleged that Judge Richardson had discussed the claim with his sister-in-law, who was administrator of the estate, and with her attorney. They asserted they did not know and could not have discovered these facts in time to move for new trial.

Insofar as material here, plaintiffs asserted that Judge Richardson's failure to disqualify himself from presiding in their trial constituted an "irregularity" under rule 252(b), requiring the judgment to be vacated and a new trial granted.

Judge Richardson recused himself from trial of the petition to vacate judgment. In doing so, he made the following statement:

> The Court at no time assisted or has had anything to do with the malpractice suit against Doctor Hayne and others brought by Pauline Richardson on behalf of the estate of Gail Richardson. Gail Richardson died following surgery in November of 1979. Approximately ten months after the death of Gail Richardson, Pauline Richardson did consult with this Court as to whether she should consider proceeding with any legal action. The Court, knowing nothing of the facts, gave no opinion but did tell Pauline that if her attorney would call this Court, the Court might then be better able to give her some advice.
>
> Her attorney did call this Court and merely told this Court that he did have an expert witness that would be willing to testify. That was the extent of the conversation that this Court had with counsel for Pauline Richardson. This Court did, however, tell her following

that telephone conversation that it would be up to her if she wanted to proceed and that it may not be wasted money. She then, after visiting with her son, Guy Richardson, determined to proceed with the lawsuit. This Court had nothing further to do with that matter.

This Court has no interest in the pending Polk County litigation, has no financial interest in the results, nor has this Court been consulted further concerning the matter. It did not occur to this Court that counsel would even believe that this Court had an interest in that litigation such as would disqualify this Court from hearing the subject matter.

The Court in the present matter considered the testimony of Doctor Hayne together with the testimony of other expert witnesses and did not find the testimony of Doctor Hayne to be as specific as to the departure from accepted medical practices as counsel Kersten believed it to be.

The Court, in its ruling which should be considered in ruling upon this motion, spoke to the testimony of Doctor Hayne; and the Court believes it clear from the Court's ruling that the Court did not disregard the testimony of Doctor Hayne nor did the Court disbelieve the testimony of Doctor Hayne. Doctor Hayne on cross examination qualified his answer by saying that to really answer the question of a departure from the accepted practice, it would have been necessary for him to be present at the surgical procedure, which he was not.

The Court again reiterates that it was not the intention of this Court to proceed with the trial of a matter which this Court should have been disqualified to hear. The Court will, however, having made this statement, recuse himself from ruling upon the Petition to Vacate Judgment and will ask that the Chief Judge of the Second Judicial District appoint another Judge for the purpose of ruling upon the Motion to Vacate Judgment, if in fact the District Court still has jurisdiction to make ruling herein.

The petition to vacate judgment was subsequently tried before Judge Russell J. Hill.

In refusing to vacate the judgment, Judge Hill relied on two grounds. One was a finding that plaintiffs failed to show they could not have discovered the basis for their petition in time to proceed under rule 236, relating to setting aside defaults, or rule 244, relating to motions for new trial. The second ground for the court's ruling was that plaintiffs did not prove Judge Richardson should have disqualified himself. Plaintiffs challenge each of these grounds.

I. As to the first ground, rule 236 on defaults has no application because plaintiffs were not seeking relief from a default. The only question is whether they could have discovered the grounds to vacate in time to move for new trial under rule 244. *See Dragstra v. Northwestern State Bank of Orange City,* 192 N.W.2d 786, 792 (Iowa 1971). Plaintiffs Thomas and Patricia Forsmark testified they did not learn of the Richardson malpractice case until after taking the appeal in their own case, long after expiration of the ten-day period for filing a motion for new trial. *See* Iowa R.Civ.P. 247. The State conceded the point. Thus it was agreed by the parties that plaintiffs lacked actual knowledge of the Richardson case in time to move for new trial.

Judge Hill did not suggest any basis for charging them with a duty to discover the facts earlier. Nothing in the record indicates plaintiffs should have been alerted to the issue sooner, and they cannot be charged under this record with an affirmative duty to investigate to ascertain the facts. We believe plaintiffs showed, as a matter of law, that the facts were not discovered and could not with reasonable diligence have been discovered by them in time to move for new trial under rule 244. We thus find no merit in the first ground relied on by Judge Hill.

II. As to the second ground, rule 252(b) permits a judgment to be vacated for irregularity in obtaining it. The general definition of "irregularity" includes:

The doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or ought not to be done. Violation or non-observance of established rules and practices. The want of adherence to some prescribed rule or mode of proceeding; consisting either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner.

Black's Law Dictionary 744 (rev. 5th ed. 1979); *accord, State ex rel. West v. City of Des Moines*, 96 Iowa 521, 535, 65 N.W. 818, 823 (1896). A judge's impartiality is basic to the due and orderly conducting of litigation. Failing to follow required procedures to determine a disqualification issue is thus an irregularity within the meaning of rule 252(b). It is analogous to extrinsic attorney conduct which is within the rule. *See Dragstra*, 192 N.W.2d at 790–92.

Plaintiffs rely on Iowa Code of Judicial Conduct Canon 3 C(1), which provides in part:

A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

In the circumstances here, plaintiffs argue that Judge Richardson's impartiality in their case "might reasonably be questioned." Their theory is that a person in their position could reasonably believe Judge Richardson had a hostile attitude toward Dr. Hayne which might affect his impartiality. This theory is based on the general language of the canon rather than on the specific grounds listed in the subsections.

■ This court discussed Canon 3 C(1)(a) in *State v. Smith*, 242 N.W.2d 320, 323–24 (Iowa 1976):

Briefly stated, Canon 3C(1)(a), is basically a broad standard by which a judge should sua sponte determine the matter of self-recusation. Stated otherwise it, followed by specifics (interest and relationship), stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in a given justiciable controversy be it civil, criminal or otherwise.

The burden is on a party seeking recusal to establish the basis for it, and the determination is committed to the judge's discretion. Abuse of discretion must appear before this court will interfere. *Id.*

In ruling on the petition to vacate, Judge Hill treated the issue as whether Judge Richardson was obliged to disqualify himself. This would have been the issue if Judge Richardson had been asked to recuse himself and refused to do so. In this situation, however, plaintiffs did not have an opportunity to ask Judge Richardson to disqualify himself, and we do not know how he would have ruled in response to such a request.

■ Judge Richardson made it clear in his post-trial statement that he did not raise the question himself because he did not think plaintiffs' counsel would believe a basis for disqualification existed. Because the judge did not raise the question and plaintiffs did not know the facts, the question was not raised and the judge's discretion was not invoked. In these circumstances the issue for Judge Hill should not have been whether Judge Richardson was obliged to disqualify himself but whether Judge Richardson should have disclosed the facts to the parties to give them an opportunity to request that he step aside.

■ Judge Richardson was told in plaintiffs' opening statement that Dr. Hayne was to be plaintiffs' principal medical witness and may have known it earlier. The judge thus knew at least by the commencement of trial that plaintiffs were going to rely on the testimony of a physician accused by the judge's sister-in-law in a separate lawsuit of responsibility for the death

of the judge's brother. This knowledge was sufficient to charge the judge with a duty to disclose his relationship with the Richardson estate case. He should have known that a party in plaintiffs' position might question his impartiality. The judge's failure to disclose the information deprived plaintiffs of the opportunity to make a timely request that he disqualify himself on the ground under Canon 3 C(1) that "his impartiality might reasonably be questioned."

We do not believe it is either practical or necessary to attempt to determine, after the fact, how Judge Richardson's discretion would have been exercised if a timely recusal motion had been made. No meaningful way existed after trial to reconstruct how the issue would have been resolved before trial. The judge failed before trial to disclose facts creating a substantial and serious issue concerning his duty to disqualify himself. As a result plaintiffs were denied an opportunity to raise the issue or be heard on it. We conclude that this omission constituted an irregularity in the obtaining of the judgment within the meaning of rule 252(b).

III. The State contends that any such irregularity was non-prejudicial because plaintiffs could not have recovered in any event. This contention rests on an argument that plaintiffs did not offer expert testimony of malpractice. In turn this argument depends on assertions that expert testimony was essential in this case and that Dr. Hayne's testimony did not constitute such evidence. These issues have been briefed in plaintiffs' appeal from the judgment in the malpractice case. We consider these issues only to the extent necessary to determine whether the State is correct in its argument that plaintiffs did not generate an issue for the trier of fact on their negligence claim.

■ Specific negligence of a physician can be established through expert testimony showing a standard of care and its breach, or through evidence showing a lack of care so obvious as to be within the comprehension of a layperson such as an injury to a part of the body not being treated. *Buckroyd v. Bunten*, 237 N.W.2d 808, 811–12 (Iowa 1976). Plaintiffs contend they offered substantial evidence of specific negligence and also generated a fact issue on a theory of res ipsa loquitur. In fact they contend the evidence was so strong they were entitled to recover as a matter of law.

The gist of plaintiffs' malpractice claim was that the operating surgeon, Dr. David Boarini, negligently struck the dura surrounding Thomas Forsmark's spinal cord during the laminectomy. The State doctors suspected a possible tumor near the spinal cord, and the operation involved removal of the bony covering around the cord to obtain access to it.

Beneath the bony covering is a two to five millimeter space. Next are three meninges or layers, three to five millimeters in total thickness, surrounding the cord. The outer layer is the dura, a tough elastic tissue. Next is the arachnoid, a transparent tissue resembling a spider web. The inner layer, separated from the arachnoid by spinal fluid, is the pia mater. The surgical procedure required removal of the bone with an instrument like pliers called a ronguer. The upper jaw of the instrument rested on top of the bone while the lower jaw was inserted in the space beneath the bone, contacting the dura. From twenty to thirty bites of the instrument were required to remove each lamina.

The first lamina was removed without incident. While extracting a piece of bone from the second lamina, an incident occurred which became the basis of plaintiffs' malpractice action. Under plaintiffs' version, the bone instrument struck the dura with sufficient velocity to tear the dura and contuse the spinal cord. Under the State's version, the dura was torn either by a fold becoming caught in the lower jaw of the instrument or by being pierced by a bone spicule during the removal process. However it happened, the incident produced a hole in the dura through which spinal fluid escaped and probably caused Thomas Forsmark's post-operative paralysis.

Plaintiffs' version of the incident was based on an entry in the operation record in which the State physicians recited that in the course of bone dissection "a bone instrument inadvertently hit the closed dura. A small tear occurred in the dura at this time." The physicians also observed that Thomas Forsmark suffered partial paralysis after the surgery, describing it as "a Brown-Sequard syndrome with paresis on the left." They said they felt the syndrome was "due only to contusion."

Dr. Hayne testified that if the instrument struck the dura with "a reasonable degree of velocity" during the surgery, the event would represent a deviation from normal procedure. The trier of fact could interpret the operation record as indicating that is what happened. The trier of fact could also find that this incident caused the Brown-Sequard syndrome. Dr. Boarini and the other State surgeon, Dr. John C. Van Gilder, denied that the instrument struck the dura with velocity. Dr. Boarini said he meant by the reference in the report "that the instrument when we removed the bone contacted the dura and in fact moved it a millimeter or something to that effect." He and Dr. Van Gilder attributed the tear of the dura to a pinching of a fold or a piercing by a bone fragment, both of which events are normal risks of the surgery. Dr. Van Gilder acknowledged that the dura was probably contused and torn simultaneously.

▇ Under this record we do not find an absence of due care so obvious as to be within the comprehension of a layperson and requiring only common knowledge and experience to understand. Plaintiffs' argument to the contrary is premised on accepting their interpretation of the operation report as a verity or on finding this to be a case of injury to a part of the body not involved in the treatment. The trier of fact, however, was free to reject their interpretation of the report, and we find the injury occurred to a part of the body within the surgical field. *See Perin v. Hayne*, 210 N.W.2d 609, 613 (Iowa 1973).

▇ The same circumstances demonstrate the inapplicability of the doctrine of res ipsa loquitur. A layperson unaided by expert testimony could not say that in the ordinary course of events the injury would not have occurred if reasonable care had been used. *See Perin*, 210 N.W.2d at 614–15. Nor was a basis for res ipsa loquitur established through expert testimony. Dr. Hayne acknowledged that the injury was of a kind that could occur despite the exercise of reasonable care. Plaintiffs' case was thus dependent on the sufficiency of expert testimony on the issue of specific negligence.

▇ We find that Dr. Hayne's testimony, based on the operation report, was sufficient for that purpose. Just as the trier of fact was not bound to accept plaintiffs' interpretation of the operation report, it was not bound to accept the State doctors' version either. If the court believed plaintiffs' interpretation, Dr. Hayne's testimony provided substantial support for a finding that the injury was caused by the State physicians' negligence. Therefore we reject the State's contention that plaintiffs could not have recovered in any event.

We reverse and remand on plaintiffs' appeal from the judgment denying their petition to vacate the malpractice case judgment. We dismiss plaintiffs' appeal of the malpractice case judgment as moot.

DISMISSED ON THE FIRST APPEAL; REVERSED AND REMANDED ON THE SECOND.

All justices concur except HARRIS, J., who takes no part.