# CARNER, et al. v CITY OF MIAMI BEACH, FLORIDA, etc., et al.

## Case No. 85-35879-CA-19

Eleventh Judicial Circuit, Dade County

June 8, 1990

## OPINION OF THE COURT

CLARENCE T. JOHNSON, JR., Circuit Judge (Supreme Court Order No: 90A-55)

### *ORDER DENYING RELIEF FROM JUDGMENT*

This cause is before the Court on "Motions for Relief From Judgment and New Trial" filed by Defendants and a "Motion to Strike or Deny Defendants Motions for Relief" filed by the Plaintiffs.

On Appellants joint motion, the Third District Court of Appeal, on March 13, 1990, temporarily relinquished jurisdiction for ninety (90) days for such motions, if filed, to be considered and ruled upon. At some point, the Chief Judge of the Eleventh Judicial Circuit, requested that the Florida Supreme Court assign a judge from outside the circuit to hear the motions. On May 8, 1990, the undersigned was appointed by the Chief Justice to do so. That Order was received on May 11, 1990. A status conference was held by conference call with the attorneys, a hearing date set, and the Court received briefs and copies

of over 175 cases, rules and statutes. A Motion for Protective Order was later heard by conference call and an all day hearing conducted in Miami on June 4, 1990. This Court has jurisdiction only through June 11, 1990.

Defendants seeks relief from judgment under Fla.R.Civ.P. 1.540(b) based on the failure of the trial judge to disclose that he had previously represented one of the Plaintiffs, Steven Carner, and failed to disclose he associated with a limited partner, Nicholas Buoniconti, in a social organization. The Motion asked for disqualification of the trial judge. That point is now moot. The motions have been extremely well briefed and argued by excellent attorneys on both sides.

### FINDINGS OF FACT:

1. That the trial judge at the commencement of his involvement in the case (apparently 1988), informed all counsel that he was familiar with individuals on both sides of the case and that he was familiar with the Marina, which is the subject matter of the case. He offered to step aside. That offer was not accepted by counsel.

2. On March 10, 1969 a Complaint for Divorce was filed by Stephen Carner against his wife, Lee Carner. There were two (2) children of the marriage, a daughter born December 14, 1956 and a son, Douglas Blaine Carner, born August 23, 1959. Douglas Blain Carner was alleged to be at the Childrens Hospital of the Menninger Clinic in Topeka, Kansas. Mr. Carner was represented by attorney Melvin B. Frumkes and Mrs. Carner was represented by attorney Marvin W. Lewis. A Final Decree of Divorce was entered on August 21, 1969, by Judge Thomas E. Lee, Jr. In various post-judgment matters the wife was represented by attorney Daniel Neal Heller, who was also guardian ad litem for the child, Douglas Blaine Carner. On April 11, 1972 Mr. Heller, as guardian ad litem, filed a "Motion to Require the Plaintiff to Pay for Douglas Carner's Schooling" at the Southard School in Topeka, Kansas. On April 17, 1972, attorney John Gale filed a Motion to Continue that hearing, then set for April 20, 1972, stating he had been retained by Stephen Carner on April 17, 1972. On September 25, 1972, John Gale filed a "Petition to Modify Final Decree of Divorce" and "Petition to Transfer Minor". There was intervening discovery, a hearing, and an order entered December 19, 1972. At one point attorney Julian R. Benjamin entered the case for Lee Millman (nee Carner). In the December 19, 1972 order, Judge Lee provided for payment of certain costs of the Menninger residency to be borne, for a designated period of time, by Stephen Carner (⅓) and by the testamentary trusts of Jack Carner and Helen Carner (⅔). This Court can find

**155**

nothing in Court file 69-4084 to indicate any further participation by Judge Gale. The file reflects that attorney Lloyd L. Reese appeared as attorney for Stephen Carner on at least one (1) motion and attorney J. Buchbinder became attorney of record for Mr. Carner. Nothing has apparently been filed in the Court file since July, 1975. Judge Gale stated that he did not remember this representation prior to Judgment. He testified at the hearing he thought he had represented the son.

3. Stephen Carner later married Anna Carner. Mr. Carner filed a dissolution action (Case No. 79-15265) which was assigned to Judge Gale, who recused on his own motion on February 2, 1981 "because the undersigned represented one of the parties in a prior case". Beginning in 1982 or 1983, Judge Gale began dating Anna Carner and did so until sometime in 1986. This fact was known to defense counsel prior to trial. Defendants say that should have jogged his memory of the prior representation of Mr. Carner.

4. While dating Anna Carner, Judge Gale got to know her son, Glen. Although he mentioned Glen's name during the trial, neither Glen nor Anna were parties to this action. Defendants say if he remembered Glen, he should have remembered his representation of Stephen Carner.

5. After a newspaper article (or articles) appeared concerning this case, Judge Gale apparently was interviewed by a newspaper reporter and a T.V. reporter and the interviews reported. While such conduct would require recusal if a judge were attempting to justify actions complained of in a Motion for Disqualification, that is not relevant here because Judge Gale voluntarily recused before the present motions were filed.

6. Nicholas Buoniconti was not a named party to this action. When his name was ready to the jury as a limited partner, Judge Gale did not respond, later saying he did not hear it read. Plaintiff says Judge Gale should have disclosed his association with Mr. Buoniconti in "The Italians", an organization Judge Gale was instrumental in starting and from which Mr. Buoniconti received a "Man of the Year" award in 1980. The sworn statement of Mr. Buoniconti reveals, in part:

1. He is not a close friend of Judge Gale and has never been so.

2. He has never socialized or been in any business deals or investments with Judge Gale.

3. He has never been to Judge Gale's home or Judge Gale to his.

4. He did attend three or four meetings in Judge Gale's chambers with a "bunch of other people" while they formed the organization.

5. Mr. Buoniconti's only involvement in "The Italians" was to attend an annual dinner and buy a table, for approximately three years before his award in 1980. He was not active in the organization after that.

6. He was presented the "Man of the Year" award in 1980, one (1) of some 500 plaques he has received in his life.

7. He has never spoken to Judge Gale about this case or his status as a limited partner. He did not even know about this lawsuit until he read about it in the newspaper.

8. Someone once asked him to make a telephone call supporting Judge Gale as NFL Commissioner. He refused to do so, saying he didn't think Judge Gale was qualified. There is no evidence before the Court that Judge Gale either participated in or was aware of that call.

### DISCUSSION OF THE LAW:

7. The disqualification of judges (in civil cases) in Florida is governed by §§ 38.02 and 38.10, Fla. Stat., Fla.R.Civ.P. 1.432, and Canon 3C, Code of Judicial Conduct. Section 38.02 covers disqualification of judges who are related within the third degree to a party or attorney in the cause, are interested in the result, or are material witnesses for or against one of the parties to the cause. Section 38.10 covers disqualification for prejudice and purports to set forth the procedure for seeking the disqualification. Fla.R.Civ.P. 1.432 provides the procedure to seek disqualification and apparently supercedes the procedure outlined in 38.02 and 38.10. Canon 3C contains both general and specific provisions. Canon 3C (1)(a) and (b) provide:

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

Canon 3C, although setting forth specific examples for disqualification, goes beyond the specifics in 3C(1) and provides for disqualification in those and other circumstances where "impartiality may reasonable be questioned". This reasonable person test is not contained in

157

38.10 which facially provides for only a subjective fear. However, the Florida Supreme Court in *Fischer v Knuck,* 497 So.2d 240 (Fla. 1986), found petitioners subjective fears, as alleged, were not "reasonably sufficient" to justify a "well founded fear" of prejudice. This Court finds that the test of reasonableness is properly applied.

Although Defendants have provided the Court with a number of cases, they primarily argue two:

1. *Liljeberg v Health Services Acquisition Corp.,* 105 S.Ct. 2194 (1988): This case involves 28 USCA § 455(a) and Federal Rule 60(b). Section 455(a) is basically a codification of Canon 3C with some federal flavoring added. Rule 60(b) is almost identical to Fla.R.Civ.P. 1.540 with one (1) major exception. Rule 1.540 provides for relief from judgment for five (5) stated reasons. Federal Rule 60(b) adds a 6th, which grants federal courts broad authority to relieve a party from final judgments "upon such terms as are just". In a 5-4 decision, the Supreme Court in *Liljeberg* vacated a judgment where the trial judge was an active trustee of a college which had a financial interest in the outcome of the case. This case was discovered post-judgment and the judge was apparently unaware of the interest although he had received minutes of a trustees meeting on January 28, 1982 where the underlying issue was discussed. He filed his judgment seven weeks later (on March 16, 1982). The Court found that scienter was not a part of § 455(a) and applied the reasonable person test to determine the appearance of partiality. The Court granted relief under provisions of Rule 60(b)(6).

In *Forsmark v State,* 349 N.W.2d 763 (Iowa 1984), the trial judge in a medical malpractice case was the brother of a man who then had a malpractice case pending against the same doctor. These facts were learned by the parties post-judgment, although the judge admittedly knew this all along. The Iowa Court vacated the judgment finding that the issue was not whether the judge was required to disqualify himself but whether he should have disclosed the facts to the parties and given them an opportunity to request he step aside.

Neither *Liljeberg* or *Forsmark* are similar to the instant case on the underlying facts on which the appearance of partiality was found. In *Liljeberg* there was clearly a disqualifying financial interest in the college for which the judge was trustee. All of the knowledge he actually or constructively had was gained within four (4) months of the rendition of his judgment. In *Forsmark* the judge clearly had a serious and present conflict which was known to him. There can be no doubt that conflict was intentionally withheld from the parties.

158

Plaintiff argues that the matter contained in Defendant's motions cannot be raised post-judgment, that the relief requested is not available under Rule 1.540, and that if available, the standard is strict and has not been met. Lastly, Plaintiff argues that none of the grounds, or all of them, would be legally sufficient for disqualification under 38.10, if raised pre-trial.

It has been held that Rule 1.540 restricts Florida COurts to the reasons and circumstances set forth in the rule and that a judgment is entitled to finality unless it falls strictly under one of the exceptions set forth in the rule. *American Fire and Casualty Company v Dawson,* 400 So.2d 840 (Fla. 2d DCA 1981). Defendants presumably have filed this motion under 1.540(b)(2): "newly discovered evidence which by due diligence could not have been discovered in time to move for new trial or rehearing". Plaintiff argues that the motion does not even state a prima facie case for relief under 1.540(b)(2) since it does not address or satisfy all of the following requirements required by case law:

1. It must appear that the new evidence will probably change the result if the Motion is granted.

2. The evidence must have been discovered since the trial.

3. The evidence could not have been discovered before trial by the exercise of due diligence.

4. The evidence must be material to the issue.

5. The evidence must not be merely cumulative or impeaching.

While the scope of Rule 1.540 and the narrow construction of its elements may well be settled in the law, the Court can find no similar Florida case which says the rule either encompasses or excludes motions containing similar allegations. Obviously, if a judicial system is to maintain the respect of its citizens, there must be a place for motions making allegations like these to be filed, heard, and determined—on the merits. Consequently, this Court finds Defendants motions to be properly filed under Rule 1.540 and, if granted, the judgment could be vacated. The question then becomes, should it be vacated under the law.

It is illogical to say on the particular facts of this case, that a motion to disqualify which, if made prior to judgment, would clearly not compel disqualification, can be elevated to a higher position post trial via Rule 1.540 so as to cause the judgment to be vacated. The results in *Forsmark* and *Liljeberg* were based on events that had they been raised in Florida pre-judgment, would have mandated disqualification

**159**

under Section 38.02. Section 38.10, Rule 1.432 and Canon 3C would have been surplusage.

The Court finds the relevant question to be whether a reasonable person knowing the facts of this case, would question the impartiality of Judge Gale. Clearly the allegations concerning the dating of Anna Carner have no bearing on the issue of impartiality. The Court finds that Judge Gale's alleged relationship with Nicholas Buoniconti, is just that, and contacts between the two have been shown to be so casual and remote as to have no bearing on the issue of impartiality. The question then boils down to whether the non-disclosure of his previous representation of Stephen Carner would cause a reasonable person to question Judge Gale's impartiality.

Many, many cases, both federal and state, have been cited to the Court holding that prior representation of a litigant in an unrelated case would not mandate disqualification under statutes and rules existing in those jurisdictions. Few of them discuss the effect of time on the issue. In *Cipollone v Liggett Group, Inc.,* 802 Fed. 2d 658 (3rd Cir. 1986), the judge had represented the American Tobacco Company in a similar products liability case some fifteen years before. Plaintiff moved to vacate the judgment, alleging the judge should have recused himself because his participation created an appearance of partiality. In denying the motion, the United States Court of Appeals (Third Circuit) held:

"[2] Even if American Tobacco Company were a party to the Cipollone case, the long passage of time since Judge Hunter's last representation of that Company requires the conclusion that no reasonable person could question his impartiality. See e.g., *Chittima-cha Tribue of Louisiana v Harry L. Laws Company, Inc.,* 690 F.2d 1157, 1166 (5th Cir. 1982), cert. denied, 464 U.S. 814, 106 S.Ct. 69, 78 L.Ed.2d 83 (1983) (recusal not warranted where judge had represented the defendant in unrelated matters at least six years earlier); *Jenkins v Bordenkircher,* 611 F.2d 162, 165-67 (6th Cir. 1979(, cert. denied, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed 2d 798 (1980) (recusal not required where trial judge had prosecuted defendant for several unrelated crimes during the period four to thirteen years prior to the time of trial); *Gravenmier v United States,* 469 F.2d 66, 67 (9th Cir. 1972) (where trial judge was of counsel in prior prosecution six years before presented unrelated prosecution, recusal not required); *Darlington v Studebaker-Packard Corp.,* 261 F.2d 903, 906 (7th Cir.), cert. denied, 359 U.S. 992, 79 S.Ct. 1121, 2 L.Ed.2d 980 (1959) (recusal not warranted where trial judge had

160

represented defendants in unrelated matters for a period of four to five years which ended three to four years before judge's decision); *Royal Air Maroc v Servair, Inc.,* 603 F.Supp. 836 (S.D.N.Y. 1985) (prior representation by trial judge of defendant's parent corporation in unrelated matter twelve years earlier no basis for recusal).

*CONCLUSIONS OF LAW:*

1. Plaintiffs Motion to Strike should be denied without detailed consideration. The Motions for Relief from Judgment in this case should be decided on the merits.

2. That the representation by Judge John Gale of Stephen Carner, in an unrelated divorce case some 17 years ago previously, is so remote in time and contrasting in substance that no reasonable person, based on that representation, could question his impartiality.

3. That Judge Gale's failure to disclose an unremembered representation so remote and dissimilar, would not warrant the relief sought if brought pre-judgment, and does not warrant the relief sought post-judgment.

4. That the Motions for Relief from Judgment should be denied. It is thereupon

ORDERED that the Motions for Relief from Judgment filed herein by the Defendants are denied.

ORDERED in Chambers at Rockledge, Brevard County, Florida, this 8th day of June, 1990.