Albert THOMPSON, Petitioner,

v.

William D. LEEKE and the Attorney General of the State of South Carolina, Respondents.

Civ. A. No. 83–2855–15.

United States District Court,
D. South Carolina,
Columbia Division.

June 8, 1984.

David I. Bruck, Columbia, S.C., for petitioner.

T. Travis Medlock, Donald J. Zelenka, Columbia, S.C., for respondents.

## ORDER

HAMILTON, District Judge.

This matter is before the court on a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 on November 4, 1983. The petitioner, Albert Thompson, is currently confined in the Central Correctional Institution after having been found guilty of armed robbery in the Pickens County Court of General Sessions, Pickens County, South Carolina, on July 9, 1980. He was sentenced to twenty-five (25) years imprisonment pursuant to that conviction.

The respondents made a return to the petition on November 30, 1983, and filed a motion for summary judgment that same day. The petitioner filed his own cross-motion for summary judgment on December 9, 1983. The matter was then referred to United States Magistrate William M. Catoe, Jr., pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this court's order of May 9, 1977, concerning the responsibilities of United States Magistrates. The matter is now before the court with the report and recommendation of Magistrate Catoe as filed on April 9, 1984. In accordance with the provisions of 28 U.S.C. 636(b)(1)(B), the petitioner filed his objections to the magistrate's report and recommendation on April 23, 1984. After reviewing the report and recommendation, the petitioner's objections thereto, and the applicable law, the court concludes that it cannot accept the magistrate's recommendation for the following reasons.

In his petition now before the court, Albert Thompson alleges that his conviction was obtained through use of a constitutionally infirm in-court identification procedure, and that, contrary to the holding of the South Carolina Supreme Court, the improper identification was not "harmless error." The petitioner was tried and convicted on an indictment alleging that he had robbed a Mrs. Marty Pace, an employee of Zippy Mart in Easley, South Carolina, on August 3, 1978. At the petitioner's July, 1980, trial, Mrs. Pace was the state's first witness. She described the store where the robbery occurred, recounted the robbery by two black males, and then identified the petitioner as the gunman. Although Mrs. Pace admitted on direct examination that she had twice been unable to identify the petitioner from separate photo arrays shown to her by the police, she stated that as soon as she saw the petitioner in the courtroom she "knew" and was "almost positive" that he was the robber who held the gun on her. *State v. Thompson,* 276 S.C. 616, 281 S.E.2d 216 (1981), Transcript of Record at pp. 23–48 and p. 70. Specifically, Mrs. Pace testified that primarily the petitioner's eyes, build and mouth "looked like" that of the robber. Transcript at pp. 61, 62, and p. 70. As summarized by the South Carolina Supreme Court in passing upon the petitioner's appeal:

the clerk testified that she never really got a good look at [petitioner] except for his eyes. She failed to identify the accused in two photographic line-ups, one held two months after the robbery and the other ten days before trial. When she failed to identify the accused at the second line-up, the police officer pointed

to his picture and said, "This is the man who robbed you." At the trial, which took place nearly two years after the robbery, the clerk testified she was "almost positive" the [petitioner] was the robber.

*State v. Thompson*, 276 S.C. 616, 281 S.E.2d 216, 218 (1981). Applying the federal constitutional principles of *Simons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1978) to this evidence, the state supreme court held that the circumstances surrounding Mrs. Pace's identification of petitioner gave rise to a "substantial likelihood of misidentification," and that the trial judge erred in permitting the state to introduce her in-court identification at trial. *Id.*

However, the court went on to observe that "for the error to require reversal, the appellant must be sufficiently prejudiced by it." It then held that in view of the fact that petitioner's alleged accomplice testified against him at trial, and in the light of certain other corroborative evidence presented by the state, the erroneous admission of the unconstitutionally obtained in-court identification by Mrs. Pace was harmless. The sole issue now before this court is whether, in holding the illegal identification by the sole eyewitness to the crime to be harmless error, the South Carolina Supreme Court misapplied the federal constitutional harmless error doctrine in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) so as to violate petitioner's rights under the Due Process Clause of the Fourteenth Amendment.

In his report and recommendation, the magistrate noted that this issue arose at trial and was appealed to and considered by the South Carolina Supreme Court in *State v. Thompson*, 276 S.C. 616, 281 S.E.2d (1981). In so noting, the magistrate asserted:

A determination after a hearing on the merits of a *factual issue*, made by a state court of competent jurisdiction in a proceeding to which the petitioner and the State or one of its officers were parties, evidenced by a written finding or opinion, should be presumed to the [sic] correct. 28 U.S.C. § 2254(d). As this case falls into none of the seven exceptions provided in § 2254(d), this court finds no reason to question the findings of the Supreme Court. See, *Sumner v. Mata*, 449 U.S. 539 [101 S.Ct. 764, 66 L.Ed.2d 722] (1981). (emphasis added). Report at p. 2.

The magistrate also asserted that assuming *arguendo* that § 2254(d) was inapplicable, the in-court identification was, nonetheless, "harmless error." This court cannot agree with either proposition set forth in the report and recommendation.

As set forth in the petitioner's memorandum of law in support of his cross-motion for summary judgment, the United States Supreme Court has made clear that a state court determination of whether a federal constitutional error may be disregarded as harmless involves a mixed question of fact and law to which § 2254(d) is inapplicable. As the Supreme Court explained in *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980):

[i]n *Townsend v. Sain*, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963), the [Supreme] Court examined the distinction between law and fact as it applies on collateral review of a state conviction. The *Townsend* opinion, the precursor of § 2254(d), noted that the phrase "issues of fact" refers "to what are called basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ...'" 372 U.S., at 309, n. 6 [83 S.Ct. at 755, n. 6], quoting *Brown v. Allen*, 344 U.S. 443, 506 [344 U.S. 397, 445, 97 L.Ed. 469] (1953) (opinion of Frankfurter, J.).

On the other hand, "[s]o-called mixed questions of fact and law, *which require the application of a legal standard to the historical-fact determinations*, are not facts in this sense." *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963) (emphasis added).

■ The harmless constitutional error analysis set forth in *Chapman v. Califor-*

*nia,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requires just such an "application of a legal standard to the historical-fact determinations" as contemplated by *Townsend*'s definition of a mixed question of fact and law. The legal standard in this instance is the *Chapman* rule that a federal constitutional error in a state court trial requires reversal of the conviction unless "the State has demonstrated, beyond a reasonable doubt, that the [error] did not contribute to [the] convictions." 386 U.S. at 26, 87 S.Ct. at 829. The mere fact that application of this federal constitutional standard necessarily involves consideration of the evidence presented at petitioner's trial does not alter the legal nature of the ultimate determination of whether or not the constitutional error may be tolerated consistent with due process. Therefore, the court finds that its determination of whether the improper in-court identification was "harmless error" is not governed by § 2254(d).

■ As the United States Supreme Court held in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. In order to comply with the *Chapman* mandate, a court must assess the record as a whole to determine the probable impact of the improper evidence on the jury. In other words, the court must weigh the prejudicial effect of improper evidence against the probative value of properly admitted evidence. *Williams v. Zahradnick,* 632 F.2d 353 (1980).

■ In reviewing the entire record of the instant case, this court cannot conclude beyond a reasonable doubt that the improper in-court identification by Mrs. Marty Pace was harmless error. The only other evidence against the petitioner consisted of the testimony of his alleged accomplice, Tony Bowens, and the accomplice's wife. While the accomplice did identify the petitioner as the gunman in the August 3,

1978, robbery, the testimony revealed that Mr. Bowens had plea bargained for his involvement in the August 3, 1978, robbery and had received a promise from the solicitor that the state would not seek the death penalty against him for his involvement in a murder committed in another county. Additionally, the record revealed that Mr. Bowens had previously plead guilty to housebreaking and larceny and to several armed robberies. The jury could easily have discounted Mr. Bowens' credibility based on the negotiations made with the state in exchange for his testimony. Likewise, the jury could have disbelieved the testimony of Gloria Bowens which basically corroborated that of her husband. Mrs. Bowens was not present during the robbery, but merely testified to what Mr. Bowens had told her. Her interest in not having the death penalty sought against her husband and her interest in continued conjugal visits while her husband is in prison may have lessened her credibility in the minds of the jurors.

The only other corroborative testimony in the case was weak, at best, and some of doubtful admissibility. The testimony of Dorethea Earl, the girlfriend of Tony Bowens, had little, if any, probative value as to the petitioner's involvement in the August 3, 1978, robbery. Ms. Earl merely testified that on *some* night in the summer of 1978 she and a girlfriend ate hamburgers with Tony Bowens and *another man.* (emphasis added) Transcript at p. 144. She could not remember the particular night, the name of the other man or even identify the petitioner as the man with Bowens. Transcript at p. 144.

Additional evidence against the petitioner consisted of the testimony of Ms. Phyllis Crook and Mr. Paul Rice which placed the petitioner in the state of South Carolina through July 22, 1978. Transcript at pp. 172–178. However, neither Ms. Crook nor Mr. Rice testified that the petitioner was in Easley on August 3, 1978. Their testimony is therefore, of little probative value.[1] The

---

1. There is some question as to the admissibility    of this testimony to impeach a statement made

court also finds the alleged comments of the petitioner to Officer Willie Bagwell during his fingerprinting to be of relatively little probative value of the petitioner's guilt or innocence. Transcript at p. 183.

The evidence in this case is not airtight. As the Fourth Circuit Court of Appeals noted in the recent case of *Alston v. Garrison*, 720 F.2d 812 (4th Cir.1983), "[w]hile some of the evidence against [the defendant] was indeed potent, ... nagging gaps in the proof appear: ..." In the instant case, there were no fingerprints of the petitioner found anywhere in the Zippy Mart (Transcript at p. 179) and the only eyewitness, Mrs. Pace, was unable to identify the petitioner as her assailant on two occasions. In the absence of Mrs. Pace's impermissible in-court identification, this court cannot conclude, after viewing the entire record, that it is clear beyond a reasonable doubt that honest fair-minded jurors would necessarily have returned a verdict of guilty against the petitioner. Under these circumstances, it is completely impossible to say that the state has demonstrated, beyond a reasonable doubt, that the in-court identification did not contribute to the petitioner's conviction. *Chapman*, 386 U.S. at 26, 87 S.Ct. at 829. For the foregoing reasons, the court cannot accept or adopt the recommendation of the U.S. Magistrate in this instance.

THEREFORE, the court orders that the petitioner's writ of habeas corpus be granted and that the state discharge him within thirty (30) days of the filing of this order unless it wishes to retry the petitioner within that period.

by the petitioner to the effect that he permanently left South Carolina in April of 1978.

However, the court need not reach this issue in order to render its decision.