**Albert THOMPSON, Appellee,**

v.

**William D. LEEKE; Attorney General of South Carolina, Appellants.**

**No. 84–6370.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1984.

Decided Feb. 25, 1985.

Harold M. Coombs, Jr., Asst. Atty. Gen., Columbia, S.C. (T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Deputy Atty. Gen., Columbia, S.C., on brief), for appellants.

David I. Bruck, Columbia, S.C., for appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges and MICHAEL, District Judge, sitting by designation.

. JAMES DICKSON PHILLIPS, Circuit Judge:

The State of South Carolina appeals the grant of a writ of habeas corpus to the appellee, Albert Thompson. 590 F.Supp. 110 (1984). The writ was granted on the basis that an in-court identification of Thompson at his trial for armed robbery was unconstitutionally tainted and that the erroneous admission of that evidence was not harmless beyond a reasonable doubt. We affirm.

I

On August 3, 1978, two men, one armed, robbed the single attending clerk in a convenience store in Easley, South Carolina, and fled with a sum of money. Thompson and one Tony Bowens were later apprehended and charged with armed robbery under state law. Bowens pleaded guilty and testified as a state's witness at Thompson's trial some two years later on a plea of not guilty. In his testimony, Bowens identified Thompson as his accomplice and claimed that Thompson had actually carried out the robbery at gunpoint, while he, Bowens, acted as look-out. In further testimony, Bowens stated that following the robbery he and Thompson went to a club where they split the stolen money; that there they met a woman friend of Bowens's with whom they later went to a restaurant; and that still later Thompson went with Bowens to take Bowens's wife to work.

During cross-examination, Bowens acknowledged an understanding on his part that the death penalty would not be sought against him in connection with a pending prosecution for robbery-murder in another case; conceded an extensive prior criminal record of larceny, housebreaking and armed robbery; conceded that he had gone over his testimony with prosecutors five or six times in the two weeks before trial; and admitted that since he had agreed to testify against Thompson, state authorities had arranged conjugal visits with him by his wife.

The woman friend who assertedly accompanied the two men to the restaurant testified for the state that she recalled seeing Bowens and another man on a summer night in 1978, but she could not recall whether it was the night of the robbery. Neither could she identify Thompson as Bowens's companion on that occasion.

Bowens's wife testified that her husband told her that he and Thompson had robbed the convenience store in question. She also stated that Thompson had come with Bowens to take her to work on the night of the robbery.

A detective testified that while being fingerprinted following his extradition to South Carolina from New Jersey where he had been in custody, Thompson had asserted to the detective that Bowens had "sold him out," and that "that lady can't identify me anyway," so that he should be released.

The store clerk who was robbed testified to the general circumstances of the robbery: that it was carried out by two men one of whom held a gun to her head and took the money. She was allowed, over objection, to make an in-court identification of Thompson, testifying then that she was "almost positive" of her identification. It developed that when shown a six-photograph array ten days before the trial an attending police officer had pointed to a photograph of Thompson and told the store clerk, "that's the guy," but that the clerk had still not been able to make the photographic identification. Neither, it was testified, had she been able to identify Thompson's from among a 12-photograph array shown her shortly after the robbery occurred.

Several other witnesses for the state disputed an out-of-court statement assertedly made by Thompson that he had left South Carolina in April 1978.

Essentially on this evidence, Thompson was convicted of armed robbery under state law. On direct appeal of his conviction, the South Carolina Supreme Court held that the police officer's conduct in the pre-trial photograph display unconstitutionally tainted the store clerk's in-court identification, but held that in total context the erroneous admission of the identification was harmless. 281 S.E.2d 216 (1981). On Thompson's later federal habeas petition in this action, the district court concluded to the contrary that the error was not harmless beyond a reasonable doubt, and on that basis issued the writ. This appeal followed.

## II

On this appeal, the unconstitutionality of the in-court identification is not disputed. Therefore, the sole issue is whether its admission constituted harmless constitutional error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under the *Chapman* standard, "[a]n error is harmless only when the court, after assessing 'the record as a whole to determine the probable impact of the improper evidence on the jury,' can conclude beyond a reasonable doubt that the error did not influence the jury's verdict." *Williams v. Zahradnick,* 632 F.2d 353, 360–61 (4th Cir.1980) (quoting *Morgan v. Hall,* 569 F.2d 1161, 1166 (1st Cir.1978), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (1978)). The test, therefore, is not whether laying aside the erroneously admitted evidence there was other evidence sufficient to convict beyond a reasonable doubt (a test that undoubtedly would be met here), but, more stringently, "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963); *cf. Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946) (proper way to apply less stringent test for harmlessness of nonconstitutional error); *see generally* R. Traynor, *The Riddle of Harmless Error* 43–44 (emphasizing strictness of *Chapman* test). We agree with the district court that, applying that test, the error here cannot be declared harmless beyond a reasonable doubt.

In the state trial the only disputed issue was Thompson's identification as a participant in the robbery. His identification depended upon the testimony of the only two eyewitnesses other than the "other man": the victim and the confessed participant. No other direct or circumstantial evidence placed Thompson at the crime scene, unless it be considered that the testimony refuting

his out-of-court claim of absence from the state or his ambivalent statements to the South Carolina detective had that effect. Both had only the most remotely circumstantial force for that purpose. The testimony refuting his out-of-court statements about his absence from the state never placed him at or near the crime scene at its time of occurrence. The statements to the detective, even if properly admitted, only revealed Thompson's knowledge of the identity of the accusers, facts necessarily communicated to him by the time, following apprehension and extradition, the statements were made.

The store clerk's identification was by the concededly tainted in-court identification. That left only the properly admitted identification by the confessed participant, Bowens. While Bowens's testimony, if credible, was clearly sufficient for the purpose, it was inevitably, to some unknowable degree, subject to questions of credibility—for reasons more specific here than that he was himself a confessed participant in the crime. There was his own understanding—whether or not based upon an enforceable plea bargain—that in consequence of his testimony he was to avoid in another case prosecution for a capital offense; there was the fact of his extensive preparation by the prosecution for giving trial testimony; and there was the fact of the arranged conjugal visits following his agreement to testify.

It is of course impossible to assess whether had Bowens's been the only identification testimony these factors would have been discounted by the jury as not sufficient to create a reasonable doubt that his identification was true, and Thompson therefore guilty beyond a reasonable doubt. But that, as indicated, is not the question in harmless error review respecting the erroneous admission of evidence. The question is rather whether in view of the credibility questions respecting the only properly admitted identification evidence, "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy*, 357 U.S. at 86–87, 84 S.Ct. at 230, 231 (test as reaf-

firmed in *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827). Given the necessarily dramatic effect of any victim's in-court identification of the perpetrator of any crime of violence or threatened violence, there can be no reasonable doubt that the victim's concededly tainted evidence here might have had at least that contributing effect. *See* Traynor, *supra*, at 71 (test of harmlessness of erroneously admitted pretrial identification where other identification evidence tenuous).

We therefore agree with the district court that the admission of the clerk's in-court identification here was constitutional error not shown to be harmless beyond a reasonable doubt, and that the writ must in consequence issue.

AFFIRMED.