**James L. DeVINE, Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, and Mark V. Meierhenry, Attorney General, State of South Dakota, Appellees.**

No. 86–5122.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1986.

Decided April 7, 1987.

Darla Pollman Rogers, Onida, S.D., for appellant.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

James Llewellyen DeVine appeals from a final judgment entered in the District Court for the District of South Dakota denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Appellant was convicted of second degree burglary and was sentenced as a habitual offender to 35 years imprisonment. For reversal he argues that the admission of statements he made to psychiatrists during a sanity evaluation violated his Fifth Amendment rights. For the reasons discussed below, we reverse and remand.

The facts underlying the burglary charge are not disputed. On November 6, 1983, at approximately 1:15 p.m., the police arrested appellant in his aunt's apartment. Having heard noises in the apartment, the manager of the apartment building investigated and found appellant therein. The door had been kicked in and the apartment had been ransacked. The manager testified that appellant appeared to be drunk.

Appellant was charged with one count of second degree burglary and two counts of intentional destruction of property. He entered pleas of guilty and not guilty by reason of insanity to each of the three counts. By stipulation during trial, the two counts of intentional destruction of property were dismissed.

Because appellant had a history of mental illness, he was referred, at the request of his attorney, to the Human Services Center at Yankton, South Dakota, to be examined by Dr. Ulises Pesce. Appellant's subsequent motion for a second psychiatric and psychological evaluation was granted, and appellant was examined by Dr. Charles Warrender in Pierre, South Dakota. Dr. Warrender relied on psychological tests administered by Lynn Goehring, a psychologist.

Appellant had previously been treated at the United States Medical Center in Springfield, Missouri, from August 12, 1982, to March 14, 1983, by Dr. Aris K. Kargas, a staff psychiatrist. Dr. Kargas, Dr. Pesce, and Dr. Warrender testified at trial to statements appellant made to them during their examinations of him. These statements are at issue in this appeal.

In response to a defense motion, the state trial court ruled that the psychiatrists would not be permitted to testify to admissions made "out of the blue" by appellant during their examinations that concerned the offenses charged or the elements of the offenses. Despite this ruling, the three psychiatrists testified to certain statements made during the evaluation. Dr. Warrender, a state witness, testified that appellant told him that he made up symptoms of mental illness in order to be transferred from the federal prison to a medical facility in Springfield, Missouri. Dr. Warrender also testified that appellant had an anti-social personality, which was manifested by vandalism and theft. Dr. Warrender concluded that appellant was sane under South Dakota law and was able to form the specific intent to commit burglary.

Dr. Kargas, a defense witness, testified that he had diagnosed appellant as suffering from a schizo-affective disorder. Dr. Kargas also testified that on the night before trial, appellant said that he "intentionally got into trouble" and that he went to his aunt's apartment and broke up the place.

Dr. Pesce, a state rebuttal witness, testified that during the course of his evaluation, appellant stated that he had committed a crime and that he "wanted to go to evaluation to be able to come up with a better solution" than going to prison. Dr. Pesce also testified that appellant had an anti-social personality and that persons

with such personalities often engage in crimes of vandalism and intentional damage to private property.

The jury found that appellant was sane and that he was guilty of second degree burglary. The jury also found appellant guilty of being a habitual offender; he was subsequently sentenced to a total of 35 years imprisonment. Appellant's conviction was affirmed by the South Dakota Supreme Court. *State v. Devine,* 372 N.W.2d 132 (S.D.1985). Appellant's petition for a writ of habeas corpus was denied by the district court in March 1986. The district court concluded that testimony concerning "false symptoms, anti-social personality traits, and [appellant's] statements concerning evaluation as an alternative to prison, all go to the issue of sanity," and were therefore properly admitted. *DeVine v. Solem,* No. 85–3053, slip op. at 7 (D.S.D. Mar. 10, 1986). The district court, relying on *Collins v. Auger,* 577 F.2d 1107, 1109 (8th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), held that the admission of appellant's statements to Dr. Kargas that he had intentionally gotten into trouble clearly violated appellant's privilege against self-incrimination. Slip op. at 7–8. The district court, however, held that this constitutional violation was harmless error, on the ground that the other evidence in the record, apart from the testimony wrongly admitted, was sufficient to establish guilt beyond a reasonable doubt. This appeal followed.

The first issue we consider is whether the admission of statements made to the psychiatrists and the psychologist violated appellant's privilege against self-incrimination. Appellant argues that the district court erred in holding that admission of the testimony concerning anti-social personality traits and feigned symptoms of mental illness did not violate his privilege against self-incrimination. Appellant contends that this testimony "worked against him on the issue of guilt, and specifically on the issue of intent and the defense of mental illness." Brief for Appellant at 10. Appellant further asserts that the testimony concerning the anti-social personality traits is

probative of guilt and not sanity and was therefore improperly admitted.

We agree with the district court that only the testimony of Dr. Kargas as to appellant's statement about intentionally getting into trouble and breaking into his aunt's apartment violated his privilege against self-incrimination. We believe that the testimony concerning feigned symptoms of mental illness and the diagnosis of an anti-social personality is not relevant to the issue of guilt but is relevant to the issue of appellant's sanity. Although we conclude that appellant's privilege against self-incrimination was not violated by the admission of this evidence, we note, as did the district court, that a bifurcated proceeding to determine sanity and guilt is preferable to the unitary procedure employed in this case. A bifurcated proceeding encourages full and complete disclosure by the defendant and eliminates the difficult task of determining whether evidence ostensibly offered to determine sanity is offered in fact to prove guilt. *United States v. Bennett,* 460 F.2d 872, 880 (D.C. Cir.1972).

The second issue is whether the admission of appellant's statement that he had intentionally gotten into trouble was harmless error. The state contends that the evidence was harmless because there was uncontroverted testimony by three witnesses that appellant was not so intoxicated as to render him unable to form the specific intent needed for the second degree burglary offense. Appellant contends that the state court and district court applied the wrong standard in determining whether the constitutional error was harmless. Appellant further asserts that the proper test is whether the objectionable evidence might have contributed to the conviction, and not whether the other evidence supporting the conviction is overwhelming as applied by the district court.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (*Chapman*), the Supreme Court stated that "before a federal constitutional error can be held harmless, the court must be able to declare or believe that it was harmless

beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. The Court reaffirmed the test for harmless error that had been adopted in an earlier case, *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827 (citation omitted). It is significant that in *Chapman* the Court rejected the California harmless error rule, which requires an examination of the evidence to determine if it is overwhelming and mandates reversal only if there is a "miscarriage of justice." *Id.* (footnote omitted). The Court further stated that "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot under *Fahy,* be conceived of as harmless." *Id.* at 23–24, 87 S.Ct. at 827–828.

 This court, in considering harmless error as applied to constitutional errors, has recognized the heavy burden the state bears of proving beyond a reasonable doubt " 'that there is [no] reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Hobbs v. Lockhart,* 791 F.2d 125, 130 (8th Cir.1986) (citation omitted); *Blackwell v. Brewer,* 562 F.2d 596 (8th Cir.1977). A finding that the evidence is sufficient to support the conviction is not dispositive of the question of harmless error. *Williams v. Engle,* 683 F.2d 152, 153 (6th Cir.1982). "The test is not, therefore, ... whether laying aside the erroneously admitted evidence there was other evidence sufficient to convict beyond a reasonable doubt ... but, more stringently, 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Thompson v. Leeke,* 756 F.2d 314, 316 (4th Cir.1985).[1]

 We conclude that the district court in the present case applied the wrong test in determining whether the admission of appellant's incriminating statements was harmless error. The test the district court applied was whether there was sufficient evidence, without consideration of the objectionable evidence, to support the conviction. After stating that the only truly controverted issue in the trial was appellant's specific intent to commit the burglary, the district court found that "the evidence, disregarding the testimony of Dr. Kargas, establishes beyond a reasonable doubt that [appellant] had the specific intent necessary to commit the crime charged." The district court further stated: "In view of the overwhelming evidence of [appellant's] guilt, however, Dr. Kargas' testimony was, at worse, cumulative and therefore the error is harmless."

As we indicated above, the proper test is whether there is a reasonable possibility that the objectionable evidence of appellant's incriminating statements made to Dr. Kargas might have contributed to the jury's decision concerning his specific intent to commit the burglary. Consequently, because of the district court's use of the wrong test in the determination of harmless error, the case is reversed and remanded for application of the proper standard. If the district court finds that there is a reasonable possibility that the admission of appellant's statement to Dr. Kargas in violation of appellant's Fifth Amendment rights might have contributed to the conviction, the district court is instructed to grant the writ.

Accordingly, the judgment of the district court is reversed and this case is remanded for proceedings consistent with this opinion.

---

1. *See Klein v. Harris,* 667 F.2d 274, 291 (2nd Cir.1981); *but see U.S. v. Crowder,* 719 F.2d 166, 172–13 (6th Cir.1983) *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984); *Harry-*

*man v. Estelle,* 616 F.2d 870, 876 (5th Cir.), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).