**Ronald LAM, Appellee,**

v.

**STATE OF IOWA and Iowa State Department of Corrections, Medium Security Unit, Appellants.**

**No. 87–1958.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1988.

Decided Nov. 9, 1988.

Thomas D. McGrane, Des Moines, Iowa, for appellants.

Kermit L. Dunahoo, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD,* Senior United States District Judge.

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western

District of Pennsylvania, sitting by designation.

JOHN R. GIBSON, Circuit Judge.

This is an appeal from an order granting Ronald Lam's petition for a writ of habeas corpus under 28 U.S.C. § 2254. Lam was found guilty on two counts of second degree burglary in Iowa state court, and was sentenced as a habitual offender to 30 years' imprisonment. The district court found that the admission into evidence of a videotaped deposition of the owner of the stolen property, who did not personally appear at trial, violated Lam's sixth amendment right of confrontation and that the error was not harmless. We conclude that the error which violated Lam's sixth amendment confrontation rights was harmless, and reverse the district court's order.

The facts underlying the charges against Lam are not disputed and are set forth by the Iowa Supreme Court in *State v. Lam*, 391 N.W.2d 245, 246–47 (Iowa 1986). On October 30, 1984 two burglaries, of the Murphy and the DeWitt apartments, occurred in the same neighborhood between 7:15 a.m. and 5:00 p.m.; in each case, the burglars gained entrance by prying open a door with a screwdriver.

On the afternoon of the burglaries, Lam and his co-defendant, Richard Holland, were seen together in a common hallway outside the Murphy apartment. They also were observed together in a parking lot outside that building where a cream-colored, two-door Cadillac, later identified as belonging to Lam, was parked.

Acting on information connecting Holland to the Murphy burglary, police officers obtained a search warrant to look for him at the apartment of Lam's sister, Donna, who was also Holland's girlfriend. Police arrested Holland there. The record reveals that Donna Lam consented to a search of her house and that one of the detectives noticed a tape deck similar to the one reported stolen by DeWitt. The detective seized the tape deck after matching the serial number to the one supplied by DeWitt. Police also found several other items of property stolen in the burglaries, including a tie tack belonging to DeWitt.

While the police were arresting Holland, Lam drove up to the apartment in a cream-colored Cadillac. The officers noticed that the car matched the description of a car seen outside the Murphy residence on the day of the burglaries. Although the police did not arrest Lam, they seized and towed his car to the police station.

Several days later, Lam came to the police station and consented to a search of the car's interior. The search revealed a watch stolen in the Murphy burglary and a screwdriver. Expert testimony later identified this screwdriver as being the instrument used to pry open the door in the Murphy burglary. The expert, however, was unable to positively identify this screwdriver as the instrument used in the DeWitt burglary, although he did find some characteristics of the pry marks on the DeWitt door that were consistent with the use of this screwdriver.

Lam was arrested and brought to trial on both burglaries. Lam's initial trial date was March 4, 1985. The state sought a continuance until March 11, 1985, because of the unavailability of its expert witness who would testify as to tool mark identification. Although Lam's counsel resisted the continuance it was granted, and the court set the trial date for March 18.[1]

Darrell DeWitt, one of the burglary victims, had made his plans for a vacation the week of March 4. When the trial was set for that date, but before the continuance was granted, he rescheduled his vacation to the week of March 18. When informed of the continuance and new trial date, DeWitt told the prosecutor he had already been seriously inconvenienced and he would not reschedule his vacation again. He had already changed vacation plans once to accommodate the trial and had also changed earlier vacation plans over the Christmas holidays after being subpoenaed for a deposition. Instead of subpoenaing him to testify at trial, the prosecutor took a videotaped deposition the week before trial, over Lam's objection. Lam and his attorney

---

1. The record is not clear as to why the court set the trial date for March 18, rather than March

11, as requested by the state in its motion for a continuance.

attended the deposition and cross-examined DeWitt. DeWitt's testimony consisted of his identification of a tape player and tie tack found at Donna Lam's residence. He testified that the items belonged to him, and that they were stolen in the burglary of his residence. DeWitt did not testify as to any of the circumstances of the crime, nor did he identify or know either Lam or Holland. At trial, DeWitt's videotaped deposition was admitted into evidence.

The jury found Lam guilty of second degree burglary. The Iowa Supreme Court affirmed his conviction. *State v. Lam*, 391 N.W.2d 245 (Iowa 1986). The Iowa Supreme Court, referring to its disposition of Holland's appeal, concluded that the admission of the videotaped deposition violated Lam's sixth amendment right to confrontation, but that the error was harmless beyond a reasonable doubt. *Lam*, 391 N.W. 2d at 251; *see also State v. Holland*, 389 N.W.2d 375, 379–80 (Iowa 1986) (en banc). Lam then filed a petition for writ of habeas corpus, which the district court granted. The district court agreed with the Iowa Supreme Court that because the state did not establish DeWitt's unavailability, admission of his videotaped testimony violated Lam's sixth amendment right to confront witnesses against him. The court further held that because DeWitt's videotaped testimony went to an essential element of the crime and it was reasonably possible that it influenced the jury, the error could not be considered harmless. The court also found the second count, based on the Murphy burglary, tainted by this evidence. The state appeals.

### I.

The sixth amendment guarantees a criminal defendant the right to confront witnesses against him. An exception exists when a witness is actually unavailable at trial, and his prior testimony bears sufficient indicia of reliability. *Mancusi v. Stubbs*, 408 U.S. 204, 216, 92 S.Ct. 2308, 2315, 33 L.Ed.2d 293 (1972); *Barber v.*

*Page*, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968); *United States v. Benfield*, 593 F.2d 815, 820 (8th Cir. 1979). However, both the district court and the Supreme Court of Iowa agreed that the state did not make a good faith effort to obtain DeWitt's presence at trial. However, DeWitt cannot be considered "actually unavailable" for purposes of this exception. *See Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968). We agree with the state and district courts that the admission of DeWitt's videotaped testimony violated Lam's right to confront witnesses against him because Lam was denied a face-to-face encounter at the time of trial. The latest decision of the Supreme Court dealing with the confrontation clause, *Coy v. Iowa*, —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (thirteen-year-old complaining witness in sexual assault separated by screen from defendant while testifying), mandates this conclusion.

### II.

The second issue is whether the admission of DeWitt's videotaped deposition was harmless error. The state contends that the error in admitting the evidence was harmless because DeWitt's videotaped testimony consisted of him merely stating that he found his home burglarized, that the tape player and tie tack found at Donna Lam's house were his, and that these items had been taken from his home without his permission. The state further asserts that because Lam's counsel was present at the videotaped deposition and cross-examined DeWitt, the court accorded Lam the essential purpose of confrontation: cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed. 2d 674 (1986). Thus, the state contends that the error could not have affected the jury and was therefore harmless.[2] Lam, on the other hand, urges that because DeWitt's testimony went to an essential ele-

**2.** The state also argues that our harmless error analysis should consider the indicia of evidentiary reliability. This test is used for determining whether the confrontation clause was violat-

ed by the admission of hearsay statements of unavailable witnesses. This argument has a certain appeal, but in light of *Van Arsdall* we need not explore its persuasive force.

ment of the crime, namely DeWitt's identification of the property as being his and being taken from his home without his permission, the error cannot be harmless.

■ "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Under this test, a court must gauge whether the error could reasonably influence the jury in a manner adverse to the defendant. *See id.* at 23–24, 87 S.Ct. at 827–28. When evidence is erroneously admitted, this impermissible influence might appear in either of two forms: the evidence might aid the state in proving its case beyond a reasonable doubt, or it might unfairly influence or prejudice the jury.

■ To determine whether erroneously admitted evidence could have influenced the jury, we may look to the record as a whole. *Cf. United States v. Roberts*, 844 F.2d 537, 547 (8th Cir.1988) (record shows guilt beyond reasonable doubt); *United States v. Roy*, 843 F.2d 305, 309 (8th Cir. 1988), *cert. denied*, — U.S. —, 108 S.Ct. 2881, 101 L.Ed.2d 916 (same).[3] The rationale for looking to the totality of the record was stated in *Coy v. Iowa, supra*, the Supreme Court's most recent confrontation clause case: "An assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Coy*, 108 S.Ct. at 2803.

In *Van Arsdall*, the Supreme Court listed a number of factors to be considered when evidentiary errors are made. Among these factors are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecutor's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. The district court was correct in pointing out that these factors must be applied in the present case to the content of DeWitt's testimony, not the confrontational quality of it. *Coy* directly states that any opinions on the confrontational quality would be speculative, and therefore useless.

■ The district court erred in finding the error was not harmless beyond a reasonable doubt. The Iowa Supreme Court found the remaining evidence to be minimally sufficient to support the conviction, *Lam*, 391 N.W.2d at 251, and the record confirms this result. Although DeWitt's testimony was used to establish an essential element of the crime, it was limited to identification of the property owned; he neither witnessed the burglary nor identified Lam as the culprit. Additionally, the prosecutor was able to produce other evidence on these points, so DeWitt's remarks were merely corroborative.

DeWitt's identification of the tie tack was supportive of evidence given by Police Officer Ploehn, who testified without objection that DeWitt had identified a tie tack found in a jewelry box on the second floor of Lam's sister's house. Trial Record at 368. As for the identification of the tape deck, several sources were used to show DeWitt's ownership. A detailed list of DeWitt's lost property was obtained, which

---

3. We do not view *DeVine v. Solem*, 815 F.2d 1205 (8th Cir.1987), as being to the contrary. *DeVine* rejected the proposition that harmlessness could be determined by the sufficiency of the remaining evidence alone. "The test is not, therefore, ... whether laying aside the erroneously admitted evidence there was other evidence sufficient to convict beyond a reasonable doubt ... but, more stringently, 'whether there is a reasonable possibility that the evidence

complained of might have contributed to the conviction.' " *DeVine*, 815 F.2d at 1208, *quoting Thompson v. Leeke*, 756 F.2d 314, 316 (4th Cir. 1985) (citations omitted).

*DeVine* does not require that we refrain from considering the rest of the record to determine harmlessness. To read it as doing so would place it in conflict with *Van Arsdall* and *Coy*, both of which are confrontation clause cases that hold such consideration essential.

contained the applicable serial numbers. *Id.* at 306. Officer Sweeny identified the tape deck found in the master bedroom of Donna Lam's apartment, *id.* at 296, and this fact was confirmed by Officer Coffman, *id.* at 315. In addition, the manual for the tape deck was introduced, *id.* at 263–64, and although not stressed at trial, the manual contained serial numbers that matched those on the tape deck.[4] Finally, there was no testimony in the entire record that contradicted this evidence concerning the ownership of the tie tack and tape deck.

Other evidence in the record is significant as well. A distinctive screwdriver was found in Lam's car when it was searched, and expert testimony linked the tool with marks on the DeWitt apartment doors. Additionally, there was testimony that Lam and Holland had been seen in the Murphy apartment parking lot on the day of the burglaries. In short, the evidence remaining in the record satisfies us that DeWitt's testimony was not necessary to finding Lam guilty beyond a reasonable doubt.

Moreover, the testimony of DeWitt was of singular nonincriminatory nature, even though it involved an essential element of the offense. The identification of property is a neutral activity common in so many settings, and does not normally possess prejudicial potential. Plaintiff's testimony did not point the finger of guilt at Lam nor arouse prejudice against him. It was simply identification of property taken from the DeWitt premises. As in *Dutton v. Evans*, 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970), the evidence was not in any sense "crucial" or "devastating." The ownership was also established by independent testimony and evidence. Under these circumstances, and considering the cumulative and corroborative nature of DeWitt's testimony, we cannot believe that the jury might reasonably have been unfairly influenced by the videotaped testimony.

In summary, we hold that the admission of the video-taped deposition was harmless beyond a reasonable doubt. The testimony was cumulative, and the prosecution's case established ownership of DeWitt's property without contradiction. The evidence was singularly nonprejudicial in nature. We are convinced that the district court's analysis of harmless error was unduly limited in its scope. We therefore reverse the judgment of the district court, and remand with instructions to deny the writ.

---

4. At a hearing on pretrial motions, the police officers specifically stated that the serial numbers given by DeWitt matched the serial numbers on the tape deck found in Donna Lam's apartment bedroom.