**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Burton LOHNES, Defendant and Appellant.**

**No. 15989.**

Supreme Court of South Dakota.

Argued Aug. 31, 1988.

Decided Nov. 23, 1988.

George E. Grassby of Whiting, Hagg & Hagg, Rapid City, for defendant and appellant.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

SABERS, Justice.

Burton Lohnes (Lohnes) appeals his conviction and life sentence for first-degree manslaughter.

### Facts

On November 13, 1980, Perry Mantzoros was shot and killed at the Ranch House Motel in Rapid City. Lohnes, a juvenile at the time, was charged with murder, burglary, and grand theft. He was tried as an adult and convicted of second-degree murder, burglary, and grand theft. This court reversed his second-degree murder conviction because it was based on an inadmissible confession and remanded the case for retrial. *See State v. Lohnes*, 324 N.W.2d 409 (S.D.1982) (*Lohnes I*).

On remand, a plea agreement was reached based on a promise of less than a life sentence. By amended information, the State charged Lohnes with first-degree manslaughter. Lohnes pled guilty to the charge and was sentenced to 347 years by the trial court. In *State v. Lohnes*, 344 N.W.2d 686 (S.D.1984) (*Lohnes II*), this court held that the sentence was improper and remanded the case to permit Lohnes to withdraw his guilty plea.

On the second remand, the trial court granted the State's motion to dismiss its amended information charging first-degree manslaughter. The State then sought to charge Lohnes with the original information alleging first-degree murder. The trial court ruled at a July 17, 1984, hearing that Lohnes could not be charged with first-degree murder since he had been acquitted of that charge at the original trial. The trial court granted Lohnes' motion to dismiss the original information and allowed the State to file a second amended information again charging first-degree manslaughter.

Lohnes was not arraigned on that charge until May 21, 1987, due to delay caused by examinations to determine his competence to stand trial and unrelated criminal proceedings in Minnehaha County. Lohnes entered a plea of not guilty and not guilty by reason of insanity. Lohnes was tried in a bifurcated trial which began August 4, 1987. In the first phase of the trial, the evidence was limited to the issue of Lohnes' guilt. The jury returned a guilty verdict on August 10th. In the second phase, the jury rejected Lohnes' claim of not guilty by reason of insanity.

### 1. Necessity Of A New Complaint And Preliminary Hearing.

#### a. *Did Prosecution Cease?*

Lohnes argues that the prosecution against him ceased after the State dis-

missed the amended information of first-degree manslaughter. He reasons that the original information charging first-degree murder was invalid because of his earlier acquittal on the charge, so he stood uncharged after the State's dismissal of the amended information. As a result, Lohnes claims that the State's filing of the second amended information was an entirely new prosecution. He claims that the failure to file a new complaint or indictment and hold a new preliminary hearing denied the trial court subject matter jurisdiction.

SDCL 23A–44–2 provides that the prosecution of a case ceases after the prosecutor *files* a dismissal of an indictment, information or complaint. The State made a motion to dismiss the amended information at a hearing, but did not file a dismissal of the information as provided by SDCL 23A–44–2. The statute contemplates that the prosecutor file a written dismissal of the information in order for the prosecution to cease. The State's failure to file a written dismissal prevented the cessation of the prosecution against Lohnes. Thus, the State's second amended information, charging first-degree manslaughter, was a continuation of the same prosecution.

b. *New Preliminary Hearing Required.*

▇ Lohnes also claims the trial court erred in failing to hold a preliminary hearing on the second amended information charging first-degree manslaughter. He claims that the original preliminary hearing was sufficient to establish probable cause for the original murder charge only, as the amended information alleging manslaughter was a new offense.

SDCL 23A–6–19 provides in part:

If trial has not commenced, a prosecuting attorney may amend an information to allege, or to change the allegations regarding, any offense arising out of the same alleged conduct of the defendant that gave rise to any offense alleged in the original information. If the change alleges a new offense, the defendant has the right to a preliminary hearing on the new offense.

This court has upheld a trial court's ruling to permit the state to amend an information without a new preliminary hearing. *State v. Remacle,* 386 N.W.2d 38 (S.D. 1986); *State v. Roden,* 380 N.W.2d 669 (S.D.1986). However, these cases did not involve any change in the actual offense charged. The question here is whether a lesser-included offense is a "new offense" under the statute. *State v. Forbes,* 203 Neb. 349, 278 N.W.2d 615 (1979), held that a preliminary hearing is unnecessary where an amended information charges a substantially similar offense, such as a lesser-included offense. The *Forbes* court stated:

[I]f a defendant is accorded a preliminary hearing and thereafter an amended information is filed charging a crime that includes some of the elements of the original crime charged without the addition of any element irrelevant to that original charge, no new preliminary hearing is necessary.

*Id.* 278 N.W.2d at 618. Although the *Forbes* court was construing a different statute, this is a proper interpretation of the language in SDCL 23A–6–19.

The murder and manslaughter charges both required proof that Lohnes unlawfully killed another with a firearm. The probable cause for those elements was established at the original preliminary hearing. Intent is the only element which differs in the two crimes. The murder charge required intent, while the manslaughter charge did not. Lohnes was charged with manslaughter under SDCL 22–16–15(3), which only requires a killing by means of a dangerous weapon. Since these elements were established at the original preliminary hearing, there were no additional elements to be established for the manslaughter charge in the second amended information, and a new preliminary hearing was unnecessary.

c. *Probable Cause.*

▇ Lohnes challenges the validity of the original preliminary hearing to establish probable cause. He claims that it was improperly based on a confession subsequently ruled inadmissible in *Lohnes I.*

In *State v. Reggio,* 84 S.D. 687, 176 N.W. 2d 62 (1970), this court indicated that a probable cause determination at a preliminary hearing, based solely on illegally obtained evidence, would render the charge invalid. However, the *Reggio* court went on to assert that if there is other evidence to establish probable cause the charge will be upheld. *Reggio, supra,* 176 N.W.2d at 64. Probable cause is established where there is sufficient evidence to justify further inquiry by a trial. *State v. Heisinger,* 252 N.W.2d 899 (S.D.1977); *State v. Brown,* 84 S.D. 201, 169 N.W.2d 239 (1969). Excluding Lohnes' inadmissible confession, the other evidence at the preliminary hearing was sufficient to establish probable cause for a trial.

2. Motions For Disqualification And Change Of Judge.

Lohnes informally requested Judge Davis to disqualify himself under SDCL 15–12–21.1. This request was denied. Lohnes then filed an affidavit of prejudice with the presiding judge of the circuit which was also denied. Lohnes also made a motion for Judge Davis to disqualify himself pursuant to SDCL 15–12–37.

Lohnes claims that the filing of an affidavit of prejudice requires that the judge assigned to the case be replaced by another judge. The State responds that Lohnes waived his right to request and demand a change of judge under SDCL 15–12–24, by submitting to the jurisdiction of Judge Davis in the two prior proceedings.

In *State v. Alexander,* 313 N.W.2d 33 (S.D.1981), the defendant was charged by indictment with four counts relating to controlled substances. The first trial ended in a mistrial and the State amended its indictment which realleged count I of the original indictment, but amended counts II through IV to allege different charges. On defendant's request for a change of judge, the court reasoned that the amended charges created new proceedings for purposes of SDCL 15–12–24, and stated:

Considering that *new charges were alleged by the amendments of counts II, III and IV, appellant was facing completely new charges with different defenses available.* He was entitled to disqualify Judge McMurchie, as he had not waived this right under SDCL 15–12–24 under those specific charges. (emphasis added).

*Id.* at 36. Despite the quoted language, the court concluded that defendant would have waived his right to change of judge if he had been retried under the original indictment and *held* that since count I of both indictments were identical any error was harmless.

■ Unlike *Alexander,* Lohnes was charged with the identical offense in both amended informations. Further, Lohnes was charged under the original complaint, so it was a continuation of the same prosecution. He pled guilty to the first amended information in Judge Davis' court. In *Lohnes II,* we remanded to permit Lohnes to withdraw his plea of guilty to manslaughter. On remand, the State charged Lohnes with the identical crime of manslaughter. Where a remanded matter is a continuation of the original proceeding, rather than a new one, the judge may not be changed by way of affidavit. *Matter of Est. Certain Terr. Elec. Boundaries,* 318 N.W.2d 118 (S.D.1982). Lohnes waived his right to disqualify Judge Davis under SDCL 15–12–24 by previously pleading guilty to manslaughter in his court.

■ Lohnes also contends that Judge Davis erred in not disqualifying himself for personal bias, pursuant to SDCL 15–12–37. Lohnes relies upon statements made by Judge Davis at the hearing to withdraw Lohnes' guilty plea, and the fact that the judge sat on the two prior proceedings. The statements of Judge Davis, read in their context, do not reveal bias. Judge Davis specifically asserted that he believed he would be able to maintain his professional impartiality and intended to provide a fair trial for Lohnes. A review of the entire record supports the position that Judge Davis provided a fair trial. The fact that Judge Davis presided over the two prior proceedings does not constitute sufficient bias for removal despite his position throughout that Lohnes should receive a substantial sentence if convicted. The

proper rule is that, "only personal bias or prejudice, as distinguished from judicial predilection, constitutes a disqualifying factor." *State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976). A disqualifying bias, under the statute, must result from an extra-judicial source. *Smith, supra; Antonello v. Wunsch*, 500 F.2d 1260 (10th Cir.1974); 46 Am.Jur.2d, *Judges* § 167 (1969). We find no bias, as a matter of law, and the decision to preside over the case remained in the sound discretion of the trial judge. *State v. Bird Head*, 225 Neb. 822, 408 N.W.2d 309 (1987); *Forsmark v. State*, 349 N.W.2d 763 (Iowa 1984).

### 3. Change Of Venue.

A trial court must grant a change of venue where there exists "so great a prejudice against a defendant that he cannot obtain a fair and impartial trial in that county." *State v. Weatherford*, 416 N.W. 2d 47, 50 (S.D.1987). The test for change of venue is "prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial." *Id.; see also State v. Christians*, 381 N.W.2d 214 (S.D.1986); *State v. Brandenburg*, 344 N.W.2d 702 (S.D.1984). We presume that a defendant can receive a fair trial in the county where the offense was committed, and will not reverse a trial court decision absent an abuse of discretion. *Weatherford, supra; State v. Luna*, 378 N.W.2d 229 (S.D.1985).

This case received considerable media attention over seven years, including extensive coverage of the original murder conviction and the subsequent guilty plea to manslaughter. While this coverage would seem to give rise to an inference of prejudice, pretrial publicity alone is insufficient to require a change of venue, as jurors may have some knowledge of the case. *Luna, supra.*

The two-day voir dire of the jury panel indicated that the extensive media attention did not prejudice Lohnes' ability to receive a fair trial. Approximately 99 jurors were impaneled in the case and only 37 indicated that they had read or heard about the case. Among those 37, 31 jurors indicated that they had not formed any opinion or impression as to Lohnes' guilt and only 7 recalled any specific information about the case. The 6 jurors who indicated that they might be affected by the media coverage were all excused for cause. As stated in *Weatherford, supra* at 51, "If the jurors were unaware of the pretrial publicity or could not recall it, or if knowledge of the publicity did not cause a prejudicial opinion to be formed, a change of venue would be unwarranted." *Weatherford* held that it was proper for a trial court to deny a motion for change of venue where the voir dire reveals that pretrial publicity did not prejudice the jury. Like *Weatherford*, this voir dire appeared successful in guarding against prejudice to Lohnes and the trial court correctly concluded a change of venue was unnecessary.

Lohnes also claims that the trial court erred in denying his motion for expert assistance to gather information necessary to make a motion for change of venue. He argues such an expert was necessary to his defense and that the denial constitutes reversible error. The trial court believed an expert was unnecessary considering the protections provided by voir dire. As indicated above, voir dire appeared successful in insuring Lohnes a fair trial and the trial court did not abuse its discretion in denying expert assistance. *Weatherford, supra; State v. Bonrud*, 393 N.W.2d 785 (S.D.1986).

### 4. Pennington County Jury Pool.

Lohnes claims that the Pennington County jury pool selection process violates his Sixth Amendment right to a jury selected from a fair cross-section of the community. He claims that the selection process results in an under-representation of and discrimination against native Americans. The defendant has the burden of establishing a prima facie showing that the cross-sectional requirement has been violated. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). To establish a prima

facie challenge the defendant must show that:

(1) the group excluded is a "distinct" group in the community;

(2) the representation of this group in jury pools is not fair and reasonable in relation to the number of such persons in the community;

(3) this under-representation is due to the systematic exclusion of the group from the jury-selection process.

*Duren, supra,* 439 U.S. at 364, 99 S.Ct. at 668; *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

■ Lohnes claims that the voter registration list used for the Pennington County jury pool creates a disparate and systematic exclusion of Indians in the jury pool. Based on 1984 Pennington County census figures, he initially showed an Indian population of 5.2% and indicated that only .52% to 1.52% of the county Indian population was registered to vote.[1] Later, based on a search of the 1987 county voter registration list for surnames of Indian and French decent, Lohnes submitted that 1,322 (3%) of the 41,514 names on the list were Indian. Voir dire established that only 2 members (2%) of the entire panel of 99 were Indian. However, 1 (or 8.3%) of the 12 jurors selected was Indian.

These statistics fail to establish the second prong for a prima facie case under *Duren.* Lohnes attempted to determine the percentage of Indians registered to vote by searching the voter list for Indian surnames. This method is unreliable, as many people of Indian decent may not have Indian surnames. *State v. Fallis,* 205 Neb. 465, 288 N.W.2d 281 (1980); *State v. Addison,* 198 Neb. 442, 253 N.W.2d 165 (1977). Though Lohnes also counted French names, and checked addresses against areas of the community generally occupied by Indians, this data is unreliable and incomplete for establishing his claim.[2] In

*State v. Plenty Horse,* 85 S.D. 401, 184 N.W.2d 654 (1971), we held that a defendant's right to equal protection was violated by the jury selection process. The statistics in that case showed that 29.9% of the county's population was Indian, while only 8% were represented on county jury lists over three years. Further, there was testimony that the county jury selectors would not certify Indians for the jury lists because they generally believed Indians to be unfit for jury service. In contrast to *Plenty Horse,* Lohnes' evidence was insufficient to meet his burden. Therefore, we cannot determine whether the representation of Indians on the voter registration list is fair and reasonable in comparison with others. We will not presume that the source for jury selection fails to provide a fair cross-section of the community, absent adequate proof. *State v. Hall,* 272 N.W.2d 308 (S.D. 1978).

■ Lohnes has also failed to show a "systematic exclusion" of Indians under the third prong of *Duren. Duren* concluded that a systematic exclusion requires that it be "inherent" in the jury-selection process. Courts have found a systematic exclusion or discrimination upon a showing that the jury-selection process was not random in excluding a certain group. *See Duren, supra; Taylor, supra; Plenty Horse, supra.* SDCL chapter 16–13 requires that the jury-selection process be random in selecting names from voter registration lists, but Lohnes failed to show that the process was not random. An "inherent" exclusion of Indians from the jury selection process may also be found with statistical evidence showing that the voting list results in an under-representation of Indians. *People v. Harris,* 36 Cal.3d 36, 201 Cal.Rptr. 782, 679 P.2d 433 (1984). If under-representation is shown, fairness requires supplementation of the jury panel.[3]

1. The record is unclear as to the source or accuracy of these latter percentages. In his brief, Lohnes cited this percentage as 5.2%.

2. In all fairness to counsel for Lohnes, an expert witness was requested to assist in this complicated effort. The trial court denied the request. Lohnes appeals the denial and we affirm the

denial as within the trial court's discretion. *State v. Archambeau,* 333 N.W.2d 807 (S.D. 1983).

3. Footnote 1 of *Hall, supra* states in part that:

*Hall, supra (citing United States v. Armsbury,* 408 F.Supp. 1130 (D.C.Or.1976)). However, Lohnes failed to meet this burden.

## 5. Special Jury Instruction On Identity.

Lohnes proposed jury instruction #9 to specially instruct the jury on the issue of his identity. The instruction stated that the jury must find beyond a reasonable doubt that Lohnes was the person who committed the crime. The court refused this instruction. Lohnes claims this refusal constitutes reversible error because a defendant is entitled to receive an instruction on the theory of his defense. *Salley v. United States,* 353 F.2d 897 (D.C.Cir.1965); *Levine v. United States,* 261 F.2d 747 (D.C. Cir.1958). *Salley* reversed a narcotics conviction based on the trial court's refusal of an instruction on the defendant's identity. The *Salley* court held that narcotics cases are appropriate to require a special instruction on identity, as evidence of a defendant's identity may rest solely upon an eyewitness account. Lohnes' reliance on these cases is misplaced, as the rule applies only to special fact situations such as the narcotics case in *Salley. United States v. Greene,* 591 F.2d 471 (8th Cir.1979). While Lohnes raised identity as an issue, he had little competent evidence to support it as most of the evidence pointed toward him. There were no special facts which required the court to specially instruct on the issue of Lohnes' identity.

The trial court instructed the jury that the State bore the burden of proving each element of the crime charged beyond a reasonable doubt. We have previously stated that where a defendant's proposed instruction is adequately contained in the trial court's other instructions there is no error in refusing to give the defendant's requested instruction. *State v. Weisenstein,* 367 N.W.2d 201 (S.D.1985).

## 6. Admission Of Certain Testimony And Exhibits From The Prior Trial.

The State called Dale Lohnes (Dale), a cousin of Lohnes, to testify at trial. Upon taking the stand, Dale testified that he could not recall certain letters sent to him from Lohnes. These letters contained incriminating statements by Lohnes and were received in the original trial. Dale also indicated that he did not recall his previous testimony. The questioning continued outside the hearing of the jury and Dale continued to claim an inability to remember his prior testimony or the letters. The trial court then admitted the letters and testimony under SDCL 19–16–29 and 19–16–30.

Lohnes argues that the State failed to lay a proper foundation to establish that Dale lacked sufficient memory to be declared unavailable as a witness. Lohnes relies upon the foundational requirements of SDCL 19–14–21 through 19–14–23 to support his argument. The use of present recollection refreshed and past recollection recorded, under these statutes, are not necessary foundational requirements to establish unavailability under SDCL 19–16–29. The only foundation necessary to establish lack of memory under SDCL 19–16–29 is that the defendant testifies to a "lack of memory of the subject matter of his statement[.]" Dale testified that he lacked memory of the letters and his prior testimony. The trial court has discretion in determining the unavailability of a witness to testify and did not abuse that discretion. *State v. Neal,* 216 Neb. 796, 346 N.W.2d 221 (1984); *State v. Drusch,* 139 Wis.2d 312, 407 N.W.2d 328 (1987).

## 7. Admission Of State's Real Evidence.

The trial court admitted several exhibits

Trial judges may avoid these challenges by supplementing any jury panel where an identifiable group is underrepresented....

This need to supplement is supported by SDCL 16–13–10.1 which provides in part:

It is the policy of the state of South Dakota that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the municipality, district or county where the court convenes.

SDCL 16–13–10.2 provides:

No citizen shall be excluded from service as a grand or petit juror in the courts of this state on account of race, color, religion, sex, national origin or economic status.

over objection.[4] Lohnes claims that the State failed to establish a sufficient chain of custody or show that the objects were substantially in the same condition at trial as at the time the crime was committed.

▬▬▬▬▬ The decision to admit real or tangible evidence over objection is within the sound discretion of the trial court and may only be reversed where there is a clear abuse of that discretion. *State v. Herman,* 253 N.W.2d 454 (S.D.1977). This court has stated:

> Physical articles which are rationally probative as to issues which are in controversy are admissible in evidence if properly identified and shown to be in substantially the same condition as at the time when the crime was committed.... If it is reasonably probable that the object has not been tampered with it is admissible in evidence.

*State v. Christmas,* 83 S.D. 506, 510, 162 N.W.2d 125, 127 (1968). A more sufficient foundation, such as "chain of custody," need only be satisfied where an object is not readily identifiable or is particularly susceptible to alteration. *Herman, supra.* This real evidence was not particularly susceptible to tampering and was readily identifiable. The record reflects that the foundation requirements were satisfied.

### 8. Request For Separate Juries.

▬▬▬ Lohnes made a motion for a bifurcated trial on the issues of guilt and insanity. The court granted the motion for a bifurcated trial but denied his request for separate juries. The court ruled that one jury should be impaneled for both phases, with voir dire for both to take place at the beginning of the trial. The court further ruled that a new jury would be impaneled if it became apparent, following the guilt phase of the trial, that the jury could not remain impartial.

When a bifurcated trial is ordered, the court should also provide for adequate procedures to insure fairness to the defendant.

> The procedure ... must effectuate the purpose of bifurcation by guarding against ... (1) prejudice to a defendant's insanity defense arising from the evidence on the merits, and (2) prejudice to a defendant's defense on the merits arising from the insanity evidence. If a bifurcated trial is not ordered, the jury must be clearly instructed that the incriminating statements may be considered only as to the issue of sanity.

*State v. Devine,* 372 N.W.2d 132, 137 (S.D. 1985)[5] (*citing Jackson v. United States,* 404 A.2d 911 (D.C.1979)). Unlike the situation in *Devine,* no incriminating statements were made by Lohnes during a psychiatric examination which would unfairly prejudice his defense on the issue of guilt. Prejudice to Lohnes' insanity defense was guarded against by the trial court's ruling that the jury's impartiality would be re-evaluated at the end of the trial on guilt. Apparently, the jury appeared to remain impartial since no new jury was impaneled.

Lohnes claims these procedures were insufficient to safeguard against prejudice to his defense on the merits. He cites to *Jackson, supra,* which stated that the voir dire should be done separately prior to each phase so that the insanity issue does not prejudice the case on the issue of guilt. While this was not done here, and may have been a better approach, this court has not required separate voir dire as a necessary procedure in a bifurcated trial. *Devine* dealt with the question of whether a bifurcated trial should have been granted and held that it was not necessary. The trial court specifically instructed the jury that any question regarding insanity could not be considered until the issue of guilt was determined. Further, the evidence in the first phase was strictly limited to the issue of guilt.

---

**4.** These exhibits included: rifle cartridge casings, bullet fragments, red-stained wash cloths, pop bottles, a telephone cord, a piece of damaged door frame and striker plate from a door, and a wallet and money.

**5.** Devine's burglary conviction was challenged by writ of habeas corpus and reversed by the Eighth Circuit Court of Appeals, in *Devine v. Solem,* 815 F.2d 1205 (8th Cir.1987), because of the admission of incriminating statements made by Devine to his psychiatrists.

In view of the factual circumstances of this case, the safeguards provided by the trial court, and the fact that Lohnes has not shown any prejudice, it does not appear that the trial court abused its discretion.

9. Imposition of A More Severe Penalty Than In The Prior Proceeding.

Lohnes contends that his life sentence was unconstitutional as it violated his right to trial by jury. He claims that certain statements in the record indicate that Judge Davis intended to punish him more severely if he proceeded to trial, rather than pleading guilty. However, a fair reading of the statements in the record provide little support for his contention.

Lohnes' also claims that it was improper for Judge Davis to impose a stiffer sentence on retrial than the sentence previously imposed following his plea of guilty to the same charge. Lohnes cites to *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which requires a judge to specifically state on the record the reasons for the increased sentence on retrial. Judge Davis did not state his reasons on the record.

The United States Supreme Court has recently stated that the procedural protections in *Pearce* are not always applicable:

[V]indictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The *Pearce* requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. Like other 'judicially created means of effectuating ... [constitutional] rights ...' we have restricted application of *Pearce* to areas where its 'objectives are thought most efficaciously served, ...' [citations omitted].

*Texas v. McCullough,* 475 U.S. 134,138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104, 110 (1986). There is no indication that Judge Davis became vindictive and changed his attitude toward Lohnes because of prior appearances before him. Based on the previous sentences and the record, it is apparent that Judge Davis believed, throughout the proceedings, that Lohnes should receive a stern sentence if convicted.

*Adamson v. Ricketts,* 758 F.2d 441 (9th Cir.1985) involved a withdrawn guilty plea and the imposition of a stiffer sentence following the defendant's conviction. The *Adamson* court stated:

In cases involving rejected or withdrawn plea bargains where a defendant receives a harsher sentence than that tendered to him, the procedural safeguards of *Pearce* have been found to have no application. [citations omitted].

Where a defendant makes a voluntary choice to reject or withdraw from a plea bargain, is convicted of the crimes alleged against him, and receives an otherwise lawful sentence for those crimes, he has no cause to complain that the sentence received is harsher than that originally tendered.

*Id.* at 448. Under *Adamson,* and the circumstances of this case, the procedural protections of *Pearce* are inapplicable.

10. Admission Of A Video Tape Of The Crime Scene.

Lohnes challenges the introduction of a video tape which showed the crime scene immediately following the crime. He claims the State failed to establish proper foundation for its admission.

Generally, the foundational requirements which govern admissibility of photographs apply equally to the admission of video taped film. *State v. Rife,* 215 Neb. 132, 337 N.W.2d 724 (1983); *Hendricks v. Swenson,* 456 F.2d 503 (8th Cir. 1972); 60 A.L.R.3d 334 (1974). The foundation necessary for the admission of such evidence is satisfied where the circumstances under which the video tape was taken are shown, and that the video tape accurately portrays the area at the time it was taken. *State v. Newman,* 4 Wash.App. 588, 484 P.2d 473 (1971). A review of the testimony of the Rapid City police officer who video taped the crime scene reveals that these foundational requirements were satisfied.

11. Life Sentence.

Lohnes claims that his sentence of life imprisonment for manslaughter is so

harsh it constitutes cruel and unusual punishment. In *State v. Weiker*, 366 N.W.2d 823 (S.D.1985), this court stated that a sentence must "shock the conscience" or be totally disproportionate to the crime in order to activate the protections of the Eighth Amendment. Lohnes cites to his complete cooperation with law enforcement officials and the court in support of his claim that his sentence shocks the conscience. He also claims that the sentence is disproportionate to the crime in view of other sentences for first-degree manslaughter in other circuits throughout this state.

The sentence involved in this case is within the statutory maximum, thus the general question for this court on review is whether the trial judge abused his discretion. *State v. Phipps*, 318 N.W.2d 128 (S.D.1982). The trial judge must consider the unique circumstances of each case in imposing a sentence, thus a comparison of other sentences for the same crime is not necessarily indicative that the sentence is disproportionate to the crime. In view of the crime and Lohnes' lack of remorse following the crime, this sentence does not shock the conscience and is not totally disproportionate to the crime. The sentence does not violate the Eighth Amendment to the United States Constitution.

AFFIRMED.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and MILLER, J., concur in part and concur in result in part.

MILLER, Justice (concurring in part, concurring in result in part).

I fully concur with the majority writing, except for the ending phrase of Issue 4 ("Pennington County Jury Pool") and therefore I can only concur in the result on that issue.

The majority, by dicta, states:

An 'inherent' exclusion of Indians from the jury selection process may also be found with statistical evidence showing that the voting list results in an underrepresentation of Indians (citing the California case of People v. Harris). If under-representation is shown, fairness requires supplementation of the jury panel.

First, that statement goes beyond the settled holdings of both *Duren* and *Plenty Horse* as neither provide or allude to any type of supplementation. Second, it is premature to make that statement, since the majority has concluded that no "inherent" exclusion was present here. Lastly, and most importantly, to state that a jury list must be supplemented is an oversimplification of what is in reality an insurmountable task, unless detailed direction is given. It ignores this basic question: "How do we supplement the panel?" To include such a broad sweeping statement, which will certainly be relied upon by counsel, does nothing more than create confusion for the trial bench and bar.

Once we are properly presented with a question, it is our duty to answer it and to give appropriate guidelines. However, to slip such gratuitous, grandiose dicta into such an important area of the law does nothing more than create dilemmas. I refuse to be a party to that.

I am authorized to state that Chief Justice WUEST joins in this concurrence in part and concurrence in result in part.